Hinsdill *v.* White.

---

## JULIA HINSDILL *v.* JOHN WHITE.

### *Illegal contract. Fraud.*

The rule will apply to a case of fraud, as to a case of duress, that where one has, by fraudulent means, induced another to pay him money, he cannot shield himself from paying it back on the ground that both parties had an illegal end in view in the transaction.

ASSUMPSIT upon the common money counts. Plea, the gen-eral issue, and trial by jury at the December term, 1859, for Bennington county, KELLOGG, J., presiding.

On trial the plaintiff introduced evidence tending to show that on the 14th day of November 1857, the defendant went to the house of the plaintiff and stated to her that on the preceeding Wednesday or Thursday, (he and his family being absent from home on both of said days,) his house at North Bennington was broken into, and a sum of money and other things belonging to him had been stolen therefrom ; that the plaintiff's son Norman, who was fifteen years of age, and who was at that time attending the Academy or school at North Bennington, was dismissed from school on the afternoon of said Wednesday, and that the teacher would take his oath that he was so dismissed and out of school on that afternoon ; that a girl named Jane Thurber, who lived very near to the defendant's house, saw the boy go into the defendant's house on the same afternoon, and would so testify ; that the boy had stolen the money and other things, and that he could prove it by the said Jane Thurber ; that he had papers to arrest the boy, and that, if the plaintiff did not settle the matter, he would arrest the boy and send him to the state prison for stealing. The plaintiff's evidence also tended to show, that on this occasion the defendant took out certain papers from his pocket, and showed them to the plaintiff, and told her they were papers to arrest her boy.

The plaintiff's evidence further tended to- show that, on the Monday next following, the boy was taken from school by his uncle, Alonzo Hinsdill, and Stebbins D. Walbridge, a grand juror of the town of Bennington, and, being charged with having committed the said crimes, he, while under duress and great fear and mental excitement, confessed to them, both on that day and the day following, that he entered the defendant's house and took the money ; and also stated to them where he had concealed it ; but no money was found on going to the place where the boy represented he had concealed it ; and thereupon the boy represented to them that he had concealed the money in a different place, which was also visited, and examined, but no money was found at the last mentioned place, and there were no signs at either place of anything having been concealed there, as represented by the boy.

The plaintiff's evidence also tended to show that on Wednes-

day the 18th day of November, 1857, she caused to be paid to the defendant the sum of eighty-five dollars in settlement of the claim which the defendant made against her son, and that on this occasion the defendant executed to her a receipt in writing, of which the following is a copy : .

"Received, Bennington, November 18th, 1857, of Mrs. Julia Hinsdill, eighty-five dollars, which is in full of all claims I have against her and her son Norman, and I hereby agree not to sue or prosecute the said Norman in any manner or form, for anything heretofore done, or to be concerned in any such prosecution."

(Signed)                                    " JOHN WHITE."

The plaintiff's evidence further tended to show that, at the time this accusation was made against her son Norman, she was a widow, and had an elder son named Lyman, who was then sick at home, and in the last stage of disease, and that he died on the Saturday next following the payment by her to the defendant as aforesaid, that during the week previous to his decease, she was kept at home in constant attendance upon him, so that she had no opportunity to investigate or make enquiry respecting the truth of the representations so made to her by the defendant ; that she made the said payment solely upon the supposition and reliance that the representations so made to her by the defendant were true, although she knew at the time of making the payment that her son Norman had confessed the taking of the money and that immediately after the death and burial of her son Lyman, she made an investigation respecting the truth of the representations so made to her.

The plaintiff offered evidence to show the entire innocence of her son in the matter ; but as the plantiff did not claim that the defendant's representations, that his house had been broken into, and money and papers stolen therefrom, were made in bad faith, nor that the defendant was insincere in the expression of his belief that the said Norman was guilty of the crime, the court ruled that evidence respecting the innocence or guilt of the son in that matter was inadmissible, except so far as it might be connected with, or might tend to establish the falsehood or truth of the other representations affecting the question of his alleged guilt, which,

as was claimed by the plantiff, were made to her by the defendant.

The plaintiff then introduced evidence tending to show that the representations respecting the said Norman being dismissed from school, and also respecting his being seen by Jane Thurber to enter the defendant's house, also respecting the defendant's having the papers to arrest the boy were entirely false, and known to the defendant to be false, when he made them to her.

The defendant introduced evidence tending to show that he acted in entire good faith in making the representations ; that he did not make any representation to the plantiff respecting her son being seen by Jane Thurber to enter his house, and that he made no representations to the plantiff respecting his having papers to arrest her son.

The defendant's evidence also tended to show (and upon this point it was uncontradicted) that his house was broken into, and that a sum of money amounting to between seventy and ninety dollars was stolen therefrom, at the time he had represented.

Upon the evidence in the case the plaintiff claimed to be entitled to recover back in this suit the sum of money so paid to the defendant, with the interest thereon.

The defendant requested the court to charge the jury that if, at the time of the payment of the sum of eighty-five dollars so paid by her to the defendant, the parties believed the said Norman had committed the crime, and that it was paid for the purpose of suppressing evidence in a criminal prosecution against the plaintiff's son, or to suppress or to prevent a criminal prosecution against him, it could not be recovered back, and that, if it was recoverable under any circumstances, it could not be recovered until after demand. There was no evidence in the case tending to show that a special demand was ever made on the defendant.

The court declined so to charge, but did charge the jury that if they should find the defendant made the representations to the plaintiff respecting her son being dismissed from school, and respecting his being seen by Jane Thurber to enter his house, and also respecting his having the papers to arrest her son, as claimed to have been made by the defendant to the plaintiff or any of said representations, with the design that the plaintiff

37

should believe and act upon the same, and, especially, for the purpose of inducing the payment of money to himself by her, as the consequence of such belief and while under its influence ; and should also find that these representations or any of them were false, and known to the defendant to be false at the time of making the same, and that the plaintiff by reason of the making of them, believed the same to be true, and paid to the defendant the sum of eighty-five dollars in consequence of the belief in the truth of the same, and would not have paid the same if she had not so believed in the truth of the same ; then the plaintiff would be entitled to recover back from the defendant the sum so paid by her to him with the interest thereon, even though the jury might also find that both parties at the time of making the payment believed Norman to be guilty of the crime alleged against him, and that the plaintiff intended in making the payment to the defendant thereby to suppress a criminal prosecution, or the evidence in a criminal prosecution, against her son ; and that it would not be necessary in such case for the plaintiff to make any demand upon the defendant for the repayment of the money.

The defendant excepted to the ruling of the court as to the inadmissibility of the evidence tending to show the guilt of Norman as above stated, and also to the refusal of the court to charge the jury agreeably to the above request, and also to the charge as given.

The jury returned a verdict in favor of the plaintiff for the sum of money so paid by her to the defendant with the interest thereon.

*Lyman* and *Hall* and *Cushman & Meacham,* for the defendant.

*A. B. Gardner* and *T. Sibley,* for the plaintiff.

POLAND, CH. J. The bill of exceptions in this case states that the defendant excepted to a decision of the court, excluding evidence offered by the defendant to prove that the plaintiff's son was in fact guilty of stealing the defendant's money.

But it does not appear from the exceptions, that the defendant offered any such evidence, or that any such decision was made.

Hinsdill *v.* White.

It does appear, that the plaintiff offered to prove that he was not guilty, and that the court excluded it, from which, as well as from the manner the case was presented to the jury, it appears the court below did not treat that fact as material in the decision of the case. The question is perhaps as fairly presented upon the charge as upon this exception. The case was put to the jury upon this ground, that even if plaintiff's son was guilty of stealing defendant's money, and both plaintiff and defendant believed him to be so, still, if the plaintiff was induced to pay the money to the defendant, and prevent the prosecution of her son, by the false and fraudulent statements of the defendant, in reference to the proof he could make against the son, and in reference to his having already procured papers for his arrest and prosecution, then the parties were not to be regarded as standing in *pari delicto*, and that the plaintiff would be entitled to recover back the money.

Was this instruction a correct view of the law ?

The general principles of law relative to contracts of this character, are not in doubt. A contract for the suppression of a prosecution for crime, is illegal and void ; the law will not enforce it, and if it has been fulfilled and payment made, the law will not furnish any remedy to recover back the money. In short, when parties contract upon such an illegal consideration, the law will leave them where it finds them, and furnish no aid to either. Both parties are regarded as equal sharers in the immorality and illegality of the transaction, and neither is entitled to any appeal to the law for relief.

But this case introduces a new element. The consideration and object of the contract and payment of the money, were in contravention of law, and to this extent the parties were in equal fault ; but the plaintiff was induced to enter into it, and to pay the money, by the false and fraudulent representations of the defendant. In such case are the parties to be regarded as in *pari delicto*, so that the law will regard them as equally reprehensible, and refuse to interfere ?

No case has been cited, nor have I been able to find any, where this precise question has been presented. The cases most analogous to this, are those where a party has been allowed to avoid

his contract, and recover back money paid, because induced by duress. In that class of cases, it does not appear to have ever been regarded as any sufficient answer to an action to recover back money paid by a party under duress, that it was paid to stifle a prosecution, and that therefore the law would give no aid. In *Richardson* v. *Duncan*, 3 N. H. 508, RICHARDSON, Ch. J., says, "But it is now well settled, that where there is an arrest for improper purposes, without a just cause ; or where there is an arrest for a just cause, without lawful authority ; or where there is an arrest for a just cause, and under lawful authority, for unlawful purposes ; it may be construed a duress." This terse statement of the law has been quoted in many subsequent cases, and by elementary writers, as a sound synopsis of the law on that subject.

Mr. Greenleaf in the 2d vol. of his treatise on Evidence, Sec. 111, in discussing the general subject of recovering back money paid, says : " But though the principal contract were illegal, yet if money has been advanced under it by one of the parties, and the contract still remains wholly executory and not carried into effect he may recover the money back upon the common money counts ; for the policy of the law in both cases is to prevent the execution of illegal contracts ; in the one case by refusing to enforce them, and in the other, by encouraging the parties to repent and recede from the iniquitous enterprise. And the same rule is applied to cases where, though the contract is executed, the parties are not in *pari delicto* ; the money having been obtained from the plaintiff by some undue advantage taken of him, or other wrong practised by the defendant."

See also the case of *Worcester* v. *Eaton*, 11 Mass. 376. If then a party may recover back money paid to settle a prosecution for crime, if under duress at the time, why should not the same principle authorize the recovery back of money paid for the same purpose, when the payment was induced by the fraud of the party receiving it ?

The payment of money by one under duress is not regarded as a voluntary payment, but as paid by coercion, but where one is induced to pay money by fraud, the law does not regard it as a voluntary payment, and upon that very ground allows it to be

recovered back. We are therefore of the opinion that the same rule should apply to a case of fraud, as to a case of duress, and to hold, that when one has by fraudulent means induced another to pay him money, he cannot shield himself from paying it back, by saying that both parties had an illegal end in view in the transaction.

The false statements made by the defendant to the plaintiff, as to his ability to make proof of the offence against her son, and of his having already taken measures for his arrest, were eminently calculated, as they appear to have been designed, to force her into a compliance with his demand, and, under the circumstances detailed in the exceptions, would be likely to overcome any mother, anxious for the credit and safety of her son.

It is claimed also by the defendant, that if the plaintiff can maintain this action at all, there must first be a demand upon the defendant for the repayment of the money. Where one has money belonging to another rightfully and lawfully in his possession, or where one has received the money of another by mistake, without fault on his own part, the law requires that it should first be demanded of him, before an action can be maintained against him therefor ; but where one has in any way wrongfully obtained the money of another, by duress, or fraud, no demand is necessary. When it is paid over by consent, but such consent is obtained by frand, it is the same as if no consent had been given.

The judgment is affirmed.