IRA P. HARRINGTON, Admr. v. HELEN E. GRANT and CHESTER DICKEY, Guardian ad litem..

[In Chancery.]

*Parties agreeing to an Illegal Act, yet not* In Pari Delicto. *A Mortgage Restored. Undue Influence.*

In 1863 the orator's intestate lived in the family of her son, and held a $1000 mortgage on his farm. He, having been drafted into the U. S. military service, induced her to surrender this mortgage, and accept another, conditioned, principally, for a life maintenance, that he might the more easily deceive the public authorities and thereby escape military duty, under a claim of exemption on the ground of supporting his mother; and, also, agreeing to restore the mortgage as soon as the war had closed. The court found from the testimony that she was under his influence, and that the contract was the mere act of the son. *Held,* that the parties were not *in pari delicto ;* that the court will take notice where the blame properly rested; and that the mortgage, deducting what the son had expended for his mother, was a valid lien on the real estate.

HEARD on bill, answer, replication and testimony, at the March Term, 1881, Washington County. REDFIELD, Chancellor, stated and decreed as follows :

" I am satisfied, by the evidence, that the contract of July, 1863, was understandingly executed, and with the mutual agreement that when the contract had been used to aid Daniel Grant in getting relieved from the impending draft, it should be given up to said Nancy Grant ; and the note and mortgage (which had been surrendered as cancelled) should be revived and restored to said Nancy. But the case shows that Nancy was supported by Daniel

for several years ; and when she left his house (but a few months before her decease) Daniel assumed to pay, and afterwards did pay for her board, and paid the expenses of her sickness, funeral charges, and procured grave stones for her. In fact Daniel substantially executed the last contract, and Nancy received the provision thus furnished. If the contract is avoided, there will necessarily be accounting and considerable cost, and I should think (if it were not for the case of *Tyler* v. *White & Carpenter*) that it was not allowable for Nancy or her heirs to set up in court that the latter contract was in fact, a fiction got up to enable Daniel Grant to deceive and defraud the officers of the government, and then to be surrendered. To avoid the cost of accounting at this stage of the case, a strictly *pro forma* decree is made. Orator's bill is *pro forma* dismissed with costs."

The case is stated in the opinion of the court.

*J. A. & G. W. Wing,* for the orator.

If the parties were both *in delicto,* they were not *in pari delicto.* He had perfect influence over her. She was old, feeble and childish ; he, young and a shrewd business man. The true doctrine is well expressed in Cooley on Torts, 505. He says that when two attempt a fraud on a third person, and one gets an advantage over the other, relief will not be refused where one of the parties is " actually or presumably " under the influence of the other ; and cites 16 N. Y. 285 ; 41 Barb. 318 ; 32 Mich. 146 ; 6 Mich. 76. The same doctrine is found in Story Eq. Jur. s. 300. All the cases refer to *Osborne* v. *Williams,* 18 Ves. 379. The *more guilty* party will not be allowed to retain the fruit at the expense of the *more innocent* one. *Tracy* v. *Talmage,* 14 N. Y. (4 Kernan,) 162, 93 ; *Bier* v. *Dagin,* 24 Gratt. 611. The case of *Tyler* v. *White,* decided by this court three or four years ago, goes further than any reported case. See also, 34 Vt. 558 ; 28 Ib. 370 ; 50 Ib. 465.

*Farnham & Chamberlin,* for the defendants.

No doctrine is better settled than that a fraudulent conveyance can only be taken advantage of by creditors or subsequent purchasers, and that it is perfectly good between the parties and their representatives. Nor will the law permit a party to allege his own fraud to avoid his contract.

The rule is just as strong as to voluntary conveyances. But no claim can be made that this is a voluntary conveyance without consideration. The consideration was ample. If one puts his property into the hands of another for the purpose of avoiding any debt, right or duty, it is a fraud, and a court will not aid him to recover it back. R. L. s. 4155 ; *Roberts, Admr.*, v. *Lund*, 45 Vt. 87 ; Story Eq. Jur. vol. 1, s. 371 ; *Peaslee, Admr.* v. *Barney, Admr.*, 1 D. Chip. 331 ; *Admr. of J. Martin* v. *E. Martin*, 1 Vt. 91.

The opinion of the court was delivered by

TAFT, J. The orator is administrator of the estate of Nancy Grant ; she was the widow of James Grant, who died in September, 1862, testate. His will contained the following bequest to Nancy :

" I give to my beloved wife, Nancy Grant, one third part of my estate, both real and personal. The said Nancy Grant to have all the rents and profits and use of the same so long as she shall choose to remain on said premises. But if at any time she shall wish to leave and live at some other place, my son Daniel is to pay her one thousand dollars, which is to be in full instead of her thirds as above stated."

Daniel Grant, his son, was residuary legatee and took the home farm of said James as such legatee. In October, 1862, Daniel and his wife executed a mortgage of the home farm to Nancy, to secure the payment of a note to her for one thousand dollars. It is conceded that this mortgage was executed in lieu of the provisions of the will. On the 16th day of July, 1863, Daniel and his wife executed a mortgage of a part of said farm, to Nancy, with a condition securing to her, support during her life, and the expenses of her burial and tomb-stones, and the mortgage for one thousand dollars was surrendered to Daniel. Daniel Grant was drafted by the military authorities of the United States, in the summer of 1863 ; and he believed that by showing that his mother was dependent upon him for support he would be relieved from the draft ; and with this belief, and for the purpose of exemption from his military duties, he procured his mother to surrender the first mortgage, and take the latter one ; but with the distinct under-

standing and agreement between them, that as soon as the war was over, and the perils of the draft passed, the first mortgage should be restored to Nancy in its original force. Nancy died in 1869, and Daniel in 1874 ; and this bill is brought to enforce the rights of Nancy under the· thousand dollar mortgage. The court fully appreciate the force of the suggestions made by the defendant's counsel as to the length of time that elapsed after the transaction, before the bringing of the suit ; that the parties to the transaction are dead ; the testimony to a great extent that of admissions ; and the necessity of requiring full proof to overthrow an admitted contract. Giving such suggestions their due weight, a critical examination of the testimony will lead to the result arrived at by the court, as to the agreement made at the time of the execution of the latter mortgage. It is fully and satisfactorily proved, and has never been changed.

The defendant insists that as Nancy was a party to the transaction, which it is claimed was an attempt to deceive and defraud the government, as to Daniel's liability to the draft, that she could not in her life, and her representatives cannot now, avoid the contract, upon the ground, that as it was illegal, (and we think it was,) the parties are *in pari delicto ;* and the case should be governed by the well-known maxim, *potior est conditio defendentis.* This is the general rule in such cases, and is well expressed in *Dixon* v. *Olmstead,* 9 Vt. 310. In speaking of an illegal contract the court say that " while it remains executory upon both parties, it is of no binding force whatever, and both parties are in contemplation of law, the same as if the contract had never been made. But if the contract has been executed on one part, by the payment of the consideration of the corrupt agreement, and the other party refuses to perform the stipulations, no action can be maintained against him, either upon the contract, or to recover back the consideration." But to this general rule there are many exceptions ; money paid for usury, for the insurance of lottery tickets, to procure the requisite number of creditors to sign the certificate of a bankrupt, and for some other purposes, may be recovered back, notwithstanding the party paying the money is im-

plicated, in some sense, in the illegal transaction, but not in the same sense with the one who receives the money. *Adams* v. *Gay*, 19 Vt. 358. Another instance is where one pays money or delivers property on a contract made on Sunday, although *in pari delicto*, the law permits him to recover the consideration paid. The following from the text books indicates the general character of the exceptions to the rule and the reasons for them, viz : " In cases where both parties are *in delicto* concurring in an illegal act, it does not always follow, that they stand *in pari delicto ;* for there may be and often are, very different degrees in their guilt ; one party may act under circumstances of undue influence or great inequality of condition or age, so that his guilt may be far less in degree than that of his associate in the offence." Story Eq. Jur. sec. 300.

" It is also a maxim in courts of equity, that wherever persons stand in such a relation that while it continues confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and such confidence is abused, or influence exerted, to get an advantage at the expense of the confiding party, a contract obtained by such means will not be permitted to stand, although it could not have been impeached if such confidential relation had not existed. 2 Chit. on Con. 977.

Judge Cooley in his work on Torts, p. 505, says that the general rule " will not be enforced against a party actually or presumably under the influence of the other, and who was influenced to engage in the illegal or dishonest transaction by means of this influence " ; and referring to the case of a client led into fraud by his attorney, for the benefit of the latter, says, " the court will take notice where the blame properly rests, and give relief against the party chiefly responsible."

*Osborne* v. *Williams*, 18 Ves. 379, is a case where father and son entered into an illegal contract in fraud of the post-office department. In deciding the case the chancellor says that : "Courts both of law and equity have held, that two parties may concur in an illegal act without being deemed to be in all respects *in pari*

*delicto.* I consider this agreement as substantially the mere act of the father. He put up to sale a situation which the young man would naturally be desirous of obtaining, and could obtain only upon the terms prescribed by his father." We are referred to an unreported case, heard in Washington County a few years since, of *Tyler* v. *The Estate of White*, where one apparently *in pari delicto*, was ordered to account for and return property received by him under an illegal contract; but we are not advised of the ground upon which the decision was based. The case may have been within one of the numerous exceptions above referred to, and we do not deem it advisable to treat it as an authority here.

Upon the facts in this case we think the parties were not *in pari delicto;* that there were different degrees of their guilt. Daniel had been selected by his parents to remain with them at home. Nothing, at that time, had arisen to disturb the friendly relations existing between them. He was an active, capable business man, in good circumstances; she was uneducated, not accustomed to business transactions, an inmate of his family, and in a situation where she would naturally be subject to his influence and control, and no doubt in dread lest he might be sent to the war. Upon the testimony, we can come to no other conclusion than that she was presumably under his influence; that the contract was the mere act of the son; and that this case is one where the court should " take notice where the blame properly rests, and give relief against the party chiefly responsible."

The mortgage of 23d October, 1862, was left for record in the town clerk's office but never in fact spread upon the records. The title under the mortgage passed by its delivery, and no question arises as to the rights of third persons. We must treat the mortgage as a valid subsisting lien upon the real estate described in it. There should be applied upon the note secured by the mortgage, all sums paid by Daniel Grant to and for the support of his mother, and expenses of her sickness, burial, and tombstones. The amount due upon the note can be stated by a master, and a decree entered, that the defendant pay the amount due upon the note in such time as may be fixed by the chancellor, or be foreclosed of all equity in the premises. The Statute of Lim-

Bartlett v. Cabot.

itations in case of mortgages being fifteen years, that defence is not established.

The *pro forma* decree of the chancellor is reversed, and cause remanded.

ROYCE, Ch. J., and POWERS, J., did not sit.