70  189
e74 121

MALONEY v. TERRY.

Opinion delivered February 8, 1902.

TRUST—CONCURRENT JURISDICTION.—Chancery has jurisdiction of a suit by a client to have his attorney declared a trustee where the attorney, in setting a claim against the ,client, fraudulently procured and retained a greater sum than was paid to settle the claim, although an action at law for money had and received would also lie.

Appeal from Pulaski Chancery Court.

THOMAS B. MARTIN, Chancellor.

Affirmed.

STATEMENT BY THE COURT.

Appellee, W. J. Terry, as administrator of the estate of Joseph Townsend, deceased, brought suit in the Pulaski chancery court by bill in equity as follows: "The plaintiff, for his cause of action, alleged that his intestate, Joseph Townsend, employed E. S. Maloney as an attorney and agent to negotiate a loan of $3,000, and to settle a claim with Sarah Townsend. That he was to settle said claim with the approval of said Joseph Townsend, upon terms most advantageous to him, the said Townsend. That he took a retainer from Sarah Townsend in the same transaction. That the said E. S. Maloney reported to said Joseph Townsend that he could not procure a settlement of the claim of Sarah Townsend for less than $1,850. That he reported to Sarah Townsend that plaintiff would only pay her $1,500. That upon his false and fraudulent representations the said Joseph Townsend agreed to pay him $1,954.50,—$100 for his fee, and the $1,850 for settlement with Sarah Townsend, and $4.50 for revenue stamps, etc. The said Joseph Townsend did pay him said sum of $1,954.50 for said terms, and the said Maloney only paid to the said Sarah Townsend $1,425, claiming that he had only received from said Joseph Townsend $1,500, out of which he reserved the sum of $75 for fees from her, the said Sarah Townsend. That the said E. S. & L. C. Maloney are partners in the practice of law, and were at the date. of the transaction herein set forth. That the said E. S. Maloney

violated his trust, and speculated upon the rights of plaintiff. That since the date of said transaction Joseph Townsend has departed this life, intestate, and W. J. Terry has been appointed the administrator of said Townsend's estate. Whereupon plaintiff prays that process issue against said defendants, and that this court decree that the said E. S. & L. C. Maloney are trustees, and hold said sum of $450 as trustees for plaintiff, and that they be required to account for and pay the same to the plaintiff, and for all other proper and general relief in the premises."

The defendants moved to transfer the cause to the Pulaski circuit court because the bill did not state facts within the jurisdiction of a court of equity. The motion was overruled, an answer filed, and the case afterwards heard upon depositions and other written evidence, and decree was entered for the appellee.

*Rose & Coleman,* for appellants.

It was error to overrule the motion to transfer. Equity has no jurisdiction where there is a plain, adequate and complete remedy at law. 67 Ark. 441; *id.* 416; 61 Ark. 66; 55 Ark. 52; 7 Ark. 520; 1 Story, Eq. Jur. § 33; 56 Ark. 370; 52 *id.* 415; Davies, 1259; 37 Ark. 292; 22 Ark. 32; 1 Ark. 31; 2 Story, Eq. § 795. The bill must allege that there is no adequate remedy at law. 18 Enc. Pl. & Pr. 109; 48 Ark. 510; 28 Ark. 341. The defendants were entitled to a trial in a law court by a jury. 19 How. 278; 3 Pet. 447; 23 Wall. 470; 105 U. S. 189.

*Blackwood & Williams,* for appellee.

The jurisdiction of equity did not attach solely on the ground of fraud, but on account of fraud practiced while in a fiduciary capacity; and the proceeding is analogus to a bill of discovery. Perry, Trusts, § 822; 27 Am. & Eng. Enc. Law, 250; 1 Story, Eq. 465; 14 Am. & Eng. Enc. Law, 176; 3 Pa. 222; 8 Ves. Jr. 363; 15 *id.* 436; 76 U. S. 365; 1 B. Mon. 353; 4 Wash. (C. C.) 248; 4 Ark. 303. Equity has jurisdiction, concurrently with law, of fraud. 33 Ark. 429; Works, Jur. 237. The appellants were trustees, and can be called to account by a court of equity. Story, Eq. 321-2; Perry, Trusts, 206; 6 Blatch. 543; 4 Wash. (C. C.), 248; 24 Wend. 9, 13; 2 Dana, 228; 7 B. Mon. 307; 11 Heisk. 487, 488; Weeks, Attys. § 296; 1 Pom. Eq. § 158. The equitable remedy is more adequate and complete. 13 Ill. App. 45; 2 Ves. Jr. 199; 60 N. W. 402; 82 Me. 499.

Wood, J., (after stating the facts.)   We are asked to reverse only upon the ground that the court had no jurisdiction.   The appellants contend that there was a complete and adequate remedy at law, and for that reason the court of chancery should have transferred the cause to the law court.   For the purpose of this motion we must look only to the complaint, and treat its allegations as true.   It sets up the trust relation, and shows that the money sued for was obtained through fraudulent representations, and was received and is held in a fiduciary capacity.   That was sufficient to give the chancery court jurisdiction.   Having jurisdiction of the subject-matter, it does not have to give it up because a court of law could also give complete and adequate redress.   This court as early as *Bently* v. *Dillard,* 6 Ark. 79, and *Hempstead* v. *Watkins, id.* 317, 42 Am. Dec. 696, held that "if a court of law and a court of equity have concurrent jurisdiction over the subject-matter, the party may make his election as to the tribunal which shall determine the controversy, and cannot be compelled to submit to an adjudication at law, when he prefers going into chancery."   This doctrine is as sound now as it was then.   There has been nothing in the constitution, statutes or decisions to change it.   Originally, all matters growing out of trust relations were exclusively of equitable cognizance.   But, as Judge Story remarked, "in modern times courts of law frequently interfere, and grant a remedy under circumstances in which it would certainly have been denied in earlier periods.   And sometimes the legislature by express enactments has conferred on courts of law the same remedial faculty which belongs to courts of equity.   Now (as we have seen) in neither case, if the courts of equity originally obtained and exercised jurisdiction, is that jurisdiction overturned or impaired by this change of the authority at law in regard to legislative enactments; for, unless there are prohibitory or restrictive words used, the uniform interpretation is that they confer concurrent and not exclusive remedial authority.   And it would be still more difficult to maintain that a court of law by its own act could oust or repeal a jurisdiction already rightfully attached in equity."   1 Story, Eq. Jur. § 80, and authorities cited in note.

In *McCrea* v. *Purmort,* 16 Wend. 460, a bill was filed to recover of the defendant certain moneys which he had received as trustee of the complainant.   Mr. Justice Cowen, for the court, said: "It is objected that the complainant had an adequate remedy at

law. I need hardly say that the argument in that form is far from precluding relief by bill in equity. If the complainant had a remedy at law by action for money had and received, which I think he had, yet equity has a clear concurrent jurisdiction. That is founded on the fact that McCrea took the money as a trustee. The action for money he had received is in the nature of a bill in equity." In *Varel* v. *New York Insurance Co.*, 7 Paige, 560, a cargo upon which the defendant had written a policy was seized under the Berlin and Milan decrees and condemned. The plaintiff and defendant having adjusted the loss at $5,000, compensation to that amount was made by the Franch government, and paid over to the defendant. On bill filed to recover the money from the defendant, it was objected that the complainant's remedy was at law. Chancellor Walworth said: "The equitable action of assumpsit is now allowed in many cases of this kind where the remedy originally was in equity only. But the fact that a remedy now exists at law in such cases does not deprive this court of its ancient jurisdiction to grant relief here, or, in the language of an English chancellor [Lord Eldon], this court is not at liberty to give up its jurisdiction because courts of law have fallen in love with it." *Hubbard* v. *U. S. Mortgage Co.*, 14 Ill. App. 40; see also *New York Insurance Co.* v. *Roulet*, 24 Wend. 504. More might be said, but see 2 Beach on Trusts and Trustees; *First Cong. Soc.* v. *Trustees*, 40 Mass. (23 Pick.), 148; *Harrison* v. *Rowan*, 4 Wash. (C. C.), 202; *Kemp* v. *Pryor*, 7 Ves. 237; *Irick* v. *Block*, 17 N. J. Eq. 189; 1 Pom. Eq. § 277, and cases cited in note; Bisp. Eq. 56; *Sweeny* v. *Williams*, 36 N. J. Eq. 627, and numerous authorities cited; *Myrick* v. *Jacks*, 33 Ark. 429.

Affirmed.

BUNN, C. J., dissenting. Mrs. Sarah Townsend, widow, and Joseph Townsend, as the son and only heir at law of M. Q. Townsend, deceased, who died intestate, each had an interest in the estate of the deceased, and especially in certain city property known as the "Fair Ground Property."

Mrs. Townsend claimed that Joseph Townsend owed her the sum of $2,750, and brought suit against him in the Pulaski chancery court. She was represented by Messrs. Ratcliffe & Fletcher, attorneys, and Joseph Townsend was represented by Mr. W. J. Terry, who was the administrator of the estate of M. Q. Townsend, as well as attorney, as I understand the matter.

Up to this time E. S. & L. C. Maloney do not appear to have had anything to do or connection with the other parties, and never afterwards had as attorneys, as I can see from the record.

While Mrs. Sarah Townsend and Joseph Townsend stood in this attitude toward each other and with reference to the estate of M. Q. Townsend, Joseph Townsend, sometime in the early part of November, 1898, saw the Maloneys, who were partners in the practice of law, and also dealt in land and other speculations, and engaged them to procure him a loan of $3,000. He had, it seems, already procured a loan of $7,000, and, to prevent him from further incumbering the property of the estate coming to him, Mrs. Townsend sued out an injunction against him, and obtained a restraining order for the purpose aforesaid. This prevented the Maloneys from negotiating the loan of the $3,000, Joseph Townsend being unable to procure the same. Mrs. Townsend says in her testimony, in substance, that, finding Joseph was about to mortgage the Fair Ground property to secure this loan, and his guardian being about to make a final settlement with him, she filed the bill for the injunction aforesaid, to save said $2,750.

Afterwards Mrs. Townsend and Joseph made a compromise of the matter. Just what the terms of the compromise were, I am unable to discover. She states that at this juncture one of the Maloneys came to her, and asked what was the least she would take for her claim against Joseph Townsend. She agreed with him to take $1,500, she to pay him $75 out of the same for his services,—presumably services on her behalf. Thereupon, in furtherance of the trade between her and the Maloneys, she executed and gave them the receipt marked "Exhibit A" in the pleadings, for the nominal consideration of $1 and other valuable considerations, which she states was in full of her claim against Joseph, and thereupon she assigned and transferred her interest in the said land against him to the Maloneys, releasing all claims against Joseph and his guardian.

The Maloneys put this matter in a somewhat different light, but there is a substantial agreement between them. In response to her question as to how Joseph would pay, Maloney says he informed her that he would make Joseph pay a good deal more than he was giving her. He says also the beginning of this negotiation between him and Mrs. Townsend was that, in a response to a telephone message from her, he called upon her, and in the course of

their conversation she informed him of certain offers she had re- ceived from others for her claim against Joseph, one for $100 and another for $1,250. That the purchase of the claim by him for $1,500 resulted as stated. He denies that he ever told Mrs. Town- send that he was representing Joseph in this matter, or in any other matter than at one time he had been engaged to effect the loan of $3,000 as stated. He says, however, that, seeing an op- portunity for making something for himself, he purchased the claim of Mrs. Townsend on account of his firm.

Maloney's testimony is not contradicted, except in some minor particulars, by any of the parties who were witnesses in the case, and the differences might well have grown out of misunderstand- ing of what was said on the occasions referred to in the testimony of witnesses.

It is not exactly clear when Maloney ascertained from Joseph Townsend what he was willing to give to settle Mrs. Townsend's claim against him, whether before or after they had purchased the same from Mrs. Townsend. The only certain effect their dealing with Mrs. Townsend had upon Joseph Townsend, so far as their employment by Joseph to effect the loan was concerned, was that, the Maloneys having bought Mrs. Townsend's claim against Joseph, they were enabled thereby to transfer to him the estate of his father, free of incumbrance, so that he might effect the desired loan of $3,000.

But the decree in the case is based upon the theory that the Maloneys, in their dealings with Mrs. Townsend, were the agents of Joseph Townsend, and, receiving from him anything in excess of the $1,500 paid Mrs. Townsend, they were acting as trustees for him; that in fact they were trustees of an implied trust for the excess of the $1,850 received from Joseph, and the $1,500 paid Mrs. Townsend. This leaves out, of course, all consideration that the Maloneys were permitted under the circumstances to deal with Mrs. Townsend as purchasers for themselves. I do not think the evidence sustains such a view of the case. The appellants oc- cupied a fiduciary relation in all matters pertaining to the interest of Joseph Townsend in the matter of effecting the loan for hire, for that was all they were engaged to do, but in nothing else. If any case of sharp bargaining were declared to be a trust, universal trade and traffic would inevitably cease. The line of demarcation between the two is well drawn. I think there is no merit in the bill, and of course that equity courts have no jurisdiction.