### I. O. DAVIS, Admr., v. Dr. J. E. SMOOT.

#### (Filed 4 December, 1918.)

**1. Contracts, Immoral — Public Policy — In Pari Delicto—Physicians—Evidence—Courts.**

In an action against a physician to recover money that his patient has paid him under a contract to give him a certain per cent of the recovery of damages for a personal injury, in consideration of favorable expert testimony to be therein given, and in the present action it appears that the charges of the physician had been knowingly and designedly made, and that the drugs he had administered had impaired the mind of his patient until relieved by the attendance of another physician: *Held,* though a recovery is not permitted when based on immoral contracts, the courts, in the fair and impartial administration of justice, and with proper regard for their own purity and integrity, will cause restitution to be made.

**2. Perjury—Contempt—Contracts, Immoral—Public Policy—Criminal Law.**

Where the plaintiff's evidence would establish the fact that the defendant, a physician, had given testimony in an action of his deceased intestate upon consideration of his giving favorable expert testimony on the

measure of damages, which the defendant in the present action has denied, and the jury have found upon allegation and evidence that the defendant had entered into the contract knowingly and designedly, and had collected the consideration named: *Held*, the defendant, upon the verdict, was guilty of gross contempt of court, with recommendation to the solicitor to consider a bill of indictment charging perjury as to the defendant's testimony in the former action.

APPEAL by defendant from *Webb, J.,* at April Term, 1918, of CABARRUS.

The complaint alleges that defendant, a practicing physician, who was an expert witness in an action to recover damages for personal injuries, over and above his expert witness fee allowed in the action and in addition to his regular bill for medical services, unlawfully charged and collected of plaintiff's intestate $125 for services as a witness in said case, which the complaint alleges was done knowingly, designedly, willfully, maliciously, and unlawfully; that the defendant had unlawfully and willfully represented to his intestate that he would be worth that much to him because he would so describe his injuries to the jury as to make his damages much larger, and that if plaintiff's intestate did not agree to said charge of 20 per cent of any amount he might recover against the city of Concord, that he would not be a willing witness for him; that plaintiff recovered a verdict of $625, and that the defendant, who had been allowed and had received an expert fee of $10, had thereafter collected $125 for testifying, as shown by an item in his receipted bill for medical services, "to 20 per cent on $625, *i. e.,* $125," and that the plaintiff has demanded the return of said $125 of the defendant, which he has refused.

From the verdict and judgment thereon in favor of the plaintiff the defendant appealed.

*G. A. Carver for plaintiff.*
*Maness & Armfield for defendant.*

CLARK, C. J.  The following issues were submitted to the jury:

1. Did the defendant, Dr. J. E. Smoot, knowingly, designedly, willfully, and maliciously and unlawfully charge A. M. Davis 20 per cent of the amount recovered by A. M. Davis from the city of Concord, as alleged in the complaint?  Answer: "Yes."

2. What amount, if anything, is the defendant indebted to the plaintiff?  Answer: "$125."

There seems to be no controversy about the facts, and the defense is rested upon the ground that the agreement was void as against public policy, and hence that the money having been paid the plaintiff cannot

recover it back. It is public policy that such a contract as this cannot be enforced, but it is also public policy that such a transaction as this cannot be allowed to stand simply because the defendant was able to enforce payment of the illegal exaction. Besides, there is in this case evidence that the defendant gave the plaintiff's intestate morphine and other medicine; that the defendant, who "had made a very good witness" at the trial, collected said $125 with great promptness after plaintiff's intestate had received it.

There was evidence that the mind of plaintiff's intestate, while Dr. Smoot was visiting him and giving him morphine, was in a very unsatisfactory condition, but when a new doctor took charge and stopped the morphine his mind got better. One witness testified "He had taken morphine until his mind was scattered and he did not know what he was doing. The morphine was given him by Dr. Smoot."

Mr. Hartsell, the counsel for the intestate in his action against the city, testifies that he did not at the time know anything about the contract for the 20 per cent to be paid Dr. Smoot, and that after it was paid the intestate tried to get him to see Dr. Smoot to secure the return of the money, but he declined to have anything to do with the matter.

The plaintiff testified that when he asked the defendant to return the $125 he inquired whether the lawyer, Hartsell, was going to pay back his fee, and when told that he was not asked to do so the defendant replied that he had done more good to the plaintiff in that action than the lawyer. The witness further testified that he asked the defendant "If he had not known he was getting a per cent if he would not have been willing to have helped my father out in testimony, and he said he would not have helped him as much. My brother was there and heard this." The defendant did not go on the stand to contradict this evidence.

The defendant's counsel contended in this Court that if there was any wrong done it caused the city of Concord to pay larger damages to plaintiff's intestate than he was entitled to recover, and, therefore, if there is to be any restitution it should be made, not to the plaintiff but by the plaintiff, to the city of Concord.

The evidence does not disclose that the recovery against the city was too large, or that the defendant perjured himself to make it such. This is not charged in the complaint, and to say the least, it is an unusual defense. So far as the record discloses, the testimony of Dr. Smoot at the trial may have been truthful. The ground of the recovery by the plaintiff is not that Dr. Smoot swore falsely in favor of their client, but that he made representations that his testimony would be more effective if he were paid 20 per cent of the recovery, and that after the trial he collected said 20 per cent out of the client over and above his expert fee of $10 allowed by the court.

The courts not only will not enforce an executory contract of this kind, but it will compel repayment when collection has been made and there is, as in this case, evidence that the party making payment was under treatment, and also under the influence of morphine administered, by the defendant until after the money was paid him, and that thereafter when his physician was changed defendant's mind improved and he made an effort to secure the return of the money.

Upon the verdict on the first issue based on above evidence, that this money had been "designedly, willfully, maliciously and unlawfully collected by the defendant," the court very properly gave judgment for its return. No court with a proper sense of its own dignity and of purity in the administration of justice, which should be always above suspicion, could permit such a transaction to stand simply because the offender has been quick enough to secure payment before proper action could be taken. The defendant, upon the verdict, was guilty of gross contempt of court.

It is commended to the consideration of the court below whether, upon the evidence in this case, proceedings in contempt should not be taken by the court in vindication of public justice, and it is for the solicitor to consider whether a bill should not be laid before the grand jury for indictment of perjury in view of the intimation by the defense in this trial that the plaintiff's intestate was unduly benefited by the too favorable testimony of the defendant in the trial of the action against the city of Concord. The transaction is not one that the court can in justice to itself allow to go off without investigation. The answer does not deny the receipt of 20 per cent of the recovery by the defendant, and alleges that it was a voluntary gift, but the defendant did not go on the stand nor put on any evidence to support such defense. That the defendant, in a civil action, does not go upon the stand in his own behalf to explain a matter calling for such explanation is a legitimate subject for comment even by counsel before a jury. *Goodman v. Sapp,* 102 N. C., 477; *Hudson v. Jordan,* 108 N. C., 12, and cases cited in Anno. Ed.

This certainly calls for investigation by the court, as above stated. Such conduct by a witness as is here alleged and found true by the verdict strikes at the very root of the administration of justice. The courts cannot permit it to pass by unnoticed.

No error.