MYER BERMAN *vs.* DANIEL COAKLEY & others.

Suffolk.    June 27, 1922. — January 3, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Attorney at Law.   Equity Jurisdiction,* Plaintiff's clean hands, Accounting.   *Extortion.    Contract,* Validity.

Although as a general rule equity jurisdiction cannot be invoked either to enforce or to abrogate a private agreement made in consideration of the suppression of a criminal prosecution, an exception to the rule arises where the parties are not in equal fault as to the illegal element of the contract and where there are elements of public policy more outraged by the conduct of one than by that of the other, and in such circumstances relief in equity may be granted to the less guilty.

A client may maintain a suit in equity against an attorney at law, engaged to represent him relating to a threatened criminal prosecution, for an accounting as to and a repayment of money paid by him to the attorney for the purpose of stifling a prosecution where such payment was made in accordance with the attorney's advice and relying on representations by him which were false and fraudulent.

The relation of attorney and client is highly fiduciary in its nature.

A bill in equity against an attorney at law, in which the allegations are in substance that, while the plaintiff and the defendant were in the relation of client and attorney, the defendant, by false and fraudulent representations relating to an alleged threatened criminal prosecution against the plaintiff, extorted from the plaintiff large sums of money without a statement of account, and in which the prayers were in substance for an accounting as to and a repayment of the sums of money so paid, is not demurrable either on the ground of want of equity or on the ground that the plaintiff has a plain, adequate and complete remedy at law.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 6, 1922, against one who formerly had been employed as an attorney at law by the plaintiff as his client, seeking an accounting and a repayment of sums alleged to have been procured extortionately by the defendant from the plaintiff for the purpose of preventing indictments.

The defendant demurred on grounds described in the opinion. The suit was reserved by *De Courcy,* J., upon the bill and demurrer for determination by the full court.

The case was submitted on briefs.

*W. H. Garland,* for the plaintiff.

*W. M. Hurd,* for the defendant Coakley.

RUGG, C.J.   This suit in equity comes before us for decision

by reservation of a single justice upon the bill and demurrer. The allegations of the bill are admitted to be true for the purposes of this discussion. Briefly summarized the allegations of the bill are that the plaintiff was the proprietor of a hotel in Boston and the defendant an attorney at law; that the defendant in October, 1916, conspired with one Corcoran to cheat and defraud the plaintiff and in execution thereof the defendant informed the plaintiff that complaint had been made to the district attorney of the Suffolk district charging the plaintiff as proprietor of his hotel with having suffered the wife of the complainant to resort to his hotel for purposes of unlawful sexual intercourse, that the defendant knew all the facts relating to the matter, and that evidence was about to be presented to the grand jury for Suffolk County and would result in an indictment against the plaintiff; that the plaintiff thereupon retained the defendant to act as attorney for him and to take such steps as seemed to the defendant expedient; that, pretending to act as attorney for the plaintiff, the defendant represented to him that Corcoran, the attorney of the injured husband, demanded $35,000 in consideration of the withdrawal of his complaint; that the defendant advised the plaintiff to comply with that demand; that the plaintiff, relying upon the pretended advice of the defendant, paid to him that sum of money upon the promise of the defendant to pay the same to Corcoran for withdrawing the complaint and for release and discharge of all claims of the complainant against the plaintiff; that these representations by the defendant were false and were pretences fraudulently made for the purpose of extorting money from the plaintiff. A second series of allegations of the same general nature omitting reference to Corcoran relate to the extortion by the defendant from the plaintiff in July, 1917, of the sum of $15,000. The allegations in substance are that the representations by the defendant were false and fraudulent and that the plaintiff had committed no such crime.

The prayers of the bill are for an accounting as to the two sums of money alleged to have been paid to the defendant and for an order for payment to the plaintiff of the amount found to be due and for general relief.

The grounds of demurrer are (1) want of equity, (2) plain, adequate and complete remedy at law, (3) that the plaintiff does

not come into court with clean hands, (4) that the bill shows that the sums of money were paid to stifle a criminal prosecution against the plaintiff, and (5) that the bill shows that the several sums of money were paid in furtherance of an unlawful agreement to compound a felony.

The last three grounds of demurrer may be grouped together for discussion because they all rest upon the illegal elements in the relations between the defendant and plaintiff in which the latter participated according to the allegations of the bill.

It is a doctrine so well settled as not to be open to discussion that courts will not aid in the enforcement, nor afford relief against the evil consequences, of an illegal or immoral contract. One branch of that general principle is that a private agreement made in consideration of the suppression of a criminal prosecution will neither be enforced nor abrogated by a court of equity. That doctrine is founded upon the public policy that the course of justice cannot be defeated for the benefit of an individual. *Worcester* v. *Eaton*, 11 Mass. 368. *Jones* v. *Rice*, 18 Pick. 440. *Atwood* v. *Fisk*, 101 Mass. 363. *Taylor* v. *Jaques*, 106 Mass. 291. *Partridge* v. *Hood*, 120 Mass. 403. *Gorham* v. *Keyes*, 137 Mass. 583. *Traders' National Bank* v. *Steere*, 165 Mass. 389. The general doctrine is subject to a qualification or exception as widely recognized and as thoroughly established as is the rule itself. That exception is that, where the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not *in pari delicto*, and where there are elements of public policy more outraged by the conduct of one than of the other, then relief in equity may be granted to the less guilty.

The exception is stated in Story Eq. Jur. (14th ed.) § 423, in these words: "And indeed in cases where both parties are *in delicto*, concurring in an illegal act, it does not always follow that they stand *in pari delicto*; for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offence. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be."

This exception was recognized in the first case which arose in this Commonwealth for the application of the rule, *Worcester* v. *Eaton*, 11 Mass. 368, where at page 376 it was said in substance that when the parties are *in pari delicto*, there could be no relief, but that, " a distinction is maintained between those cases in which one of the parties has, by an illegal act, taken an advantage of and oppressed the other, and those in which it is not possible to distinguish between the parties, as to the degree of their criminality." Reference is made to the recovery of usurious interest as an example where the law affords relief though both parties join in the wrong. In that case the general principle was applied.

In *White* v. *Franklin Bank*, 22 Pick. 181, however, the exception was applied. That was a case where a contract by a bank for the payment of money at a future day certain was prohibited. But it was held that, notwithstanding the prohibition, the person who made the contract with the bank could recover back his deposit from the bank. This exception to the general rule was followed in *Atlas Bank* v. *Nahant Bank*, 3 Met. 581, where similar facts were in issue. *Bryant* v. *Peck & Whipple Co.* 154 Mass. 460.

The exception was applied again in *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24, where it was held that a town compelled to pay double indemnity to a traveller injured by a defect in the highway might recover single damages only against a railroad through whose negligence the defective condition of the highway arose. This principle was recognized and a large number of supporting authorities were cited in *Lowell* v. *Glidden*, 159 Mass. 317, 319. To the same effect are *Holyoke* v. *Hadley Co.* 174 Mass. 424, and *Boston* v. *Coon*, 175 Mass. 283. Another case of the application of the exception is *Simpson* v. *Mercer*, 144 Mass. 413, where the wrong of a constable in attaching property was involved. Although these highway cases are not strictly applicable to the case at bar (see *Boott Mills* v. *Boston & Maine Railroad*, 218 Mass. 582, at page 594), the principle on which they rest is closely analogous.

The case at bar is covered exactly by *Belding* v. *Smythe*, 138 Mass. 530. That was a case where the plaintiff executed two instruments to the defendant, an attorney at law, which were champertous in their nature, and the plaintiff brought action for the cancellation of the instruments. The court said, " The defend-

ant in his brief contends that the plaintiff is not entitled to relief in equity, because, if the agreements are champertous, the parties are *in pari delicto*. No such contention appears in the defendant's answer. The defendant is an attorney at law, and, in dealing in this manner with one whom he makes his client, the parties are not regarded as *in pari delicto*." Champerty, like compounding a felony, is a crime at common law in this Commonwealth. *Thurston* v. *Percival*, 1 Pick. 415. The fact, if it be a fact, that one may be a felony and the other a misdemeanor cannot be any sound ground for distinction between the case at bar and *Belding* v. *Smythe*. Although pleading is mentioned in *Belding* v. *Smythe*, it is plain that the decision does not rest on that ground. A champertous agreement was also set aside in *Gargano* v. *Pope*, 184 Mass. 571, where there was no question of pleading, on the authority of *Belding* v. *Smythe*.

Several New York cases are illuminating on this point. In *Ford* v. *Harrington*, 16 N. Y. 285, a client, in order to secrete his property from his creditors, conveyed or assigned it to the defendant, his attorney, upon the advice of the latter for a grossly inadequate consideration. Action was brought by the representative of the client after his death to compel reconveyance. The court said, pages 290, 293, 294, "The facts disclosed present a case where the court would be called upon to interfere between the defendant and the representative of his client, and compel the former to restore what he had obtained without consideration, were it not for the fact that in making the assignment the parties were both perpetrating a fraud, were both committing a crime; and the question is, which rule is to govern the case, the one applicable to dealings between attorney and client, or the rule that the court will not lend its aid to either of the parties to an illegal or fraudulent contract, either by enforcing its execution, if it be executory, or by rescinding it, if it be executed. The plaintiff's counsel insists that the former rule should be applied, because it is founded in considerations of public policy. But public policy also dictated the adoption of the other rule. . . . I think this is a case where, on account of the relations existing between the parties and the circumstances under which the contract was assigned, the court was called upon to interfere and compel the attorney to restore what he had acquired under the assignment, on being repaid what

he had disbursed, although the object of the assignment was to perpetrate a fraud. The parties, although *in delicto,* did not stand *in pari delicto.* In the transaction, Conway was a mere instrument in the hands of the defendant. If an attorney will so far forget or wilfully disregard his duty to the courts, whose license to practice he holds; to his clients, who, in consequence of such license, are induced to seek and act upon his counsel, and to the public, as, for the purpose of gain and profit to himself, to induce by his advice the commission of fraud by those who thus confide in him, he at least should be compelled to restore to his victim the fruits of his iniquity. It would be a reproach to our judicial tribunals should they allow their officers, those appointed by them as their assistants in the administering of justice and equity, thus to acquire property by a prostitution of the trust so confided to them, and then to interpose the fraud, committed pursuant to their advice as such officers, as a shield to protect them in the possession and enjoyment of that property."

Again in *Place* v. *Hayward,* 117 N. Y. 487, the right of an attorney to retain property of his client conveyed to him by the latter in fraud of creditors was involved, and the plaintiff was permitted to recover on the ground that the attorney was the more guilty of the two and was advising his client. To the same effect is *Freelove* v. *Cole,* 41 Barb. 318, affirmed 41 N. Y. 619. These New York decisions are strongly persuasive as to the result which here ought to be reached. They support *Belding* v. *Smythe,* 138 Mass. 530, and *Gargano* v. *Pope,* 184 Mass. 571. To the same effect in principle are *Smith* v. *Blachley,* 188 Penn. St. 550, and *Hinsdill* v. *White,* 34 Vt. 558.

Another principle has been stated sometimes as the ground for relief. It was said in *Cox* v. *Donnelly,* 34 Ark. 762, at page 766, "Although, in general, courts of equity will not interpose to grant relief to persons who are parties to agreements or other transactions against public policy, there are cases where the public interest requires that they should, for the promotion of public policy, interpose, and the relief in such cases is given to the public through the party." It was phrased in *Madison* v. *Sharp,* 4 Cold. 275, at page 281, in these words: "In cases where agreements or other transactions are repudiated, on account of their being against public policy, the circumstance that the relief is asked by a party

who is *particeps criminis,* is not in equity material. The reason is, that the public interest requires that relief should be given, and it is given to the public through the party; and in these cases, relief will be granted, not only by setting aside the agreement or other transaction, but also, in many cases, by ordering re-payment of any money paid under it."

In many cases illegal contracts have been set aside chiefly because of fraud, undue influence, duress or kindred grounds; but they contain interesting discussion tending to support the conclusion we reach. *Reynell* v. *Sprye,* 1 DeG., M. & G. 660, 678, 679, 682, 683, 689. *Osborne* v. *Williams,* 18 Ves. 379. *Colby* v. *Title Ins. & Trust Co.* 160 Cal. 632, 640, 643. *Bell* v. *Campbell,* 123 Mo. 1, 16. *Hobbs* v. *Boatright,* 195 Mo. 693, 721–724. *Davis* v. *Smoot,* 176 N. C. 538. *Bertschinger* v. *Campbell,* 99 Wash. 142. *Duval* v. *Wellman,* 124 N. Y. 156. *Harper* v. *Harper,* 85 Ky. 160. *Barnes* v. *Brown,* 32 Mich. 146, 153. *Woodall* v. *Peden,* 274 Ill. 301. *Baltimore & Ohio Southwestern Railroad* v. *Hagan,* 183 Ind. 522. *Gilchrist* v. *Hatch,* 183 Ind. 371. *Griffin* v. *Chriswisser,* 84 Neb. 196. *Crossley* v. *Moore,* 11 Vroom, 27, 35. *Harrington* v. *Grant,* 54 Vt. 236, see *Williams* v. *Bayley,* L. R. 1 H. L. 200. Decisions like *Jones* v. *Henderson,* 189 Ky. 412, and *Holland* v. *Sheehan,* 108 Minn. 362, see note 20 A. L. R. 1476, need not be discussed because they are distinguishable in their facts from the case at bar.

An attorney at law has been said to be a public officer. He is an officer of the court sworn to aid in the administration of justice and to act with all good fidelity both to his clients and to the court. The public have a deep and vital interest in his integrity. *Burrage* v. *County of Bristol,* 210 Mass. 299, 301. *Bergeron, petitioner,* 220 Mass. 472, 476, 477. It is a matter of profound importance from every point of view that members of the bar be men of probity and rectitude, jealous to maintain relations of utmost honesty with their clients and solicitous to protect them against legal wrong. Unflinching fidelity to their genuine interests is the duty of every attorney to his clients. Public policy hardly can touch matters of more general concern than the maintenance of an untarnished standard of conduct by the attorney at law toward his client. The attorney and client do not deal with each other at arms' length. The client often is in many respects power-

less to resist the influence of his attorney. If that influence be vicious, untoward, criminal, the relation of trust is abused and becomes the source of wrong. It requires no discussion to demonstrate that upon the allegations of the present bill the defendant failed to conform to the obligation resting upon him as attorney for the plaintiff. These allegations, taken at their face value, as is necessary on demurrer, show that the conduct of the defendant was far more reprehensible than that of the plaintiff. The plaintiff and the defendant were not *in pari delicto.* Whatever may be justly said in condemnation of the acts of the plaintiff is less than is necessary touching the acts of the defendant.

It follows on the authorities to which reference already has been made that the case at bar does not come within the general doctrine that equity will not afford relief as to a contract for the suppression of a criminal prosecution, but falls within the exception, and that the parties hereto are not *in pari delicto* and that hence relief will be afforded to the plaintiff as plainly the less offending of the two. No one of the last three grounds of demurrer can be sustained.

The first two grounds of demurrer are equally untenable.

The relation of attorney and client between the defendant and the plaintiff is averred in unmistakable terms in the bill. That relation is highly fiduciary in its nature. The attorney is not permitted by the law to take any advantage of his client. The principles holding the attorney to a conspicuous degree of faithfulness and forbidding him to take any personal advantage of his client are thoroughly established. They have been fully stated and rigorously applied. *Dunne* v. *Cunningham,* 234 Mass. 332, and cases there collected. The defendant is alleged to have received large sums of money from the plaintiff by way of extortion although upon representations as to use of the same for the benefit of the plaintiff. That circumstance together with the existence of the trust relation and the receipt by the defendant of large sums of money arising out of that relation without a statement of account is enough to warrant the interposition of equity to adjust the relation between the parties, when taken in conjunction with the necessary balancing of fault on the part of each to which allusion already has been made. The existence of the trust relation goes far toward justifying relief in equity for abuse of the

confidence thus reposed in respect to financial transactions. The fiduciary connection is the chief ground for equity jurisdiction over actions by corporations against faithless directors. *Warren v. Para Rubber Shoe Co.* 166 Mass. 97, 104. *Cosmopolitan Trust Co. v. Mitchell,* 242 Mass. 95, 121.

All the factors of the case at bar bring it within the principle of numerous decisions. *Gargano v. Pope,* 184 Mass. 571, 574. *Reynell v. Sprye,* 1 DeG., M. & G. 660. *O'Brien v. Lewis,* 32 L. J. Ch. (N.S.) 569. *Falardeau v. Washburn,* 199 Mass. 363. *Rolikatis v. Lovett,* 213 Mass. 545. *Maloney v. Terry,* 70 Ark. 189. *Robinson v. Sharp,* 201 Ill. 86. *Broyles v. Arnold,* 11 Heisk. 484. *Kelley v. Repetto,* 17 Dick. 246. *Scott v. Wickliffe,* 1 B. Mon. 353. *Williams v. Storrs,* 6 Johns. Ch. 353.

*Demurrer overruled.*