DAVID ATWOOD *vs.* ASA FISK & another.
ANTHONY CURRANT *vs.* SAME.

A bill in equity will not lie to compel the surrender or cancellation of an overdue promissory note and a mortgage given to secure its payment, on the ground that the consideration for the note and mortgage was a promise of the payee to forbear to prosecute for an embezzlement.

Two BILLS IN EQUITY to compel the surrender or cancellation of two overdue promissory notes, dated in 1861, and signed by the plaintiffs respectively, with Joseph Atwood, each note for the payment by the promisors, jointly and severally, to the order of the defendants, of $1340, in equal semiannual instalments of $67, with interest; and of two mortgages of real estate, containing the usual power of sale clauses, given by the plaintiffs, respectively, to the defendants, to secure the payment of the notes. The ground on which the bills were sought to be maintained was, that the consideration of the notes and mortgages was a promise of the defendants to the plaintiffs, to forbear to prosecute Joseph Atwood, who was a bookkeeper in the employ of the defendants, for embezzling money of his employers; that therefore the instruments were null and void; but that, so long as they remained outstanding, they constituted a cloud on the title of the plaintiffs in the real estate, and might be used to the injury of the plaintiffs at some future time when evidence of the illegality of their consideration should be lost. The answers denied the plaintiffs' allegations concerning the consideration for the instruments, and alleged a lawful consideration therefor. Issue was joined on the answers, and the cases were reserved by *Colt,* J., on the bills, answers and evidence, for the determination of the full court.

*G. D. Noyes,* (*J. C. Crowley* with him,) for the plaintiffs.

*P. W. Chandler & J. B. Thayer,* for the defendants, were stopped by the court.

AMES, J. A note, given in consideration of a composition of felony, or of a promise not to prosecute for a crime of a lower degree than a felony, is illegal, and cannot be enforced by the

promisee against the promisor. And it makes no difference that, of various elements making up the entire consideration, a part, and even the larger part, was legal and valid. If part of the con-. sideration was illegal, the effect upon the note would be the same as if the whole were illegal. The plaintiffs insist that the notes referred· to in their bills of complaint fall within this rule of law.

But it has also long been settled that the law will not aid either party to an illegal contract to enforce it against the other, neither will it relieve a party to such a contract who has actually fulfilled it, and who seeks to reclaim his money or whatever article of property he may have applied to such a purpose. The meaning of the familiar maxim, *in pari delicto potior est conditio defendentis*, is simply that the law leaves the parties exactly where they stand ; not that it prefers the defendant to the plaintiff, but that it will not recognize a right of action, founded on the illegal contract, in favor of either party against the other. They must settle their own questions in such cases without the aid of the courts. In the somewhat quaint language of Lord Chief Justice Wilmot in *Collins* v. *Blantern*, 2 Wils. 350, " all writers upon our law agree in this ; no polluted hand shall touch the pure fountains of justice. Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a court to fetch it back again ; you shall not have a right of action when you come into a court of justice in this unclean manner to recover it back. *Procul, o procul este, profani!* " In this respect the rule in equity is the same as at law. Equity follows the rule of the law, and will not interfere for the benefit of one such party against a *particeps criminis*. The suppression of illegal contracts is far more likely in general to be accomplished, by leaving the parties without remedy against each other. And so the modern doctrine is established, that relief is not granted where both parties are truly *in pari delicto*. 1 Story Eq. § 298. *Claridge* v. *Hoare*, 14 Ves. 59.

There is no reason why equity should be able to grant relief upon principles different from those recognized in courts of law If the plaintiffs were occupying the position of defendants, and if

the cases before us were actions brought to recover the amount of the notes in question, they could avail themselves of the maxim above refered to by way of defence. But they do not stand in that position. They are themselves invoking the aid of the court in its equity jurisdiction, to relieve them from a contract which they allege to be illegal. They are actors, or plaintiffs, and apparently are in a position in which the maxim in question can be invoked and relied upon on the other side. If the notes were founded on an illegal consideration, why should the court lend its process to aid one party to the illegality, rather than the other? What superior equities, in that view of the case, have these plaintiffs over the defendants? We see no such inequality in position, or abuse of advantages, as to entitle them to the aid of the court on the ground of public policy. If there has been a composition of a felony, or a suppression of a criminal prosecution, the plaintiffs were parties to it as well as the defendants, and it may perhaps be argued that the plaintiffs have had the benefit of the alleged corrupt agreement, and are merely seeking to be relieved from its inconveniences. They are seeking not to get back money paid under an illegal contract, but to recall notes and securities which they have given under such a contract, a distinction which is too slight to make much difference in the substantial equities of the case. *Worcester* v. *Eaton*, 11 Mass. 375.

We see no occasion for the interference of the court, as prayed for, upon any view of the case. If the bookkeeper embezzled the funds of his employers, he not only committed a crime, but he also incurred a debt. This debt he was legally and morally bound to pay, and the defendants had a right to make use of all lawful and proper means to enforce its payment or to obtain security. The rule of the common law, that all civil remedies in favor of a party injured by a felony are either merged in the higher offence against public justice, or suspended until after the termination of a criminal prosecution against the offender, is no part of the law of Massachusetts. *Boston & Worcester Railroad Co.* v. *Dana*, 1 Gray, 83. The fact that the debt grew out of a breach of trust, and had its orgin in fraud and crim-

inality, is not a reason, as a matter of law, for bestowing upon the debtor any peculiar privileges or exemptions. If the suppression of a criminal prosecution was one of the considerations for the contracts made and securities given by the plaintiffs, they can avail themselves of that fact as a defence in any suit at law against them upon such contracts. They are in no danger of losing the benefit of that defence in consequence of any transfer of the notes to a third person. Some of the instalments were overdue and unpaid, and for that reason no indorsee could so hold them as to deprive the plaintiffs of their defence. As to the exercise by the mortgagees of the power of sale given by the terms of the mortgages, it cannot be difficult for the plaintiffs to see that any purchaser at such sale should be fully notified (if notice should be thought necessary) of all grounds of objection to the notes and mortgages, and of their intention to contest any title which such purchaser shall venture to buy at the sale. It is well settled that all defences (except the statute of limitations) that can be made against the notes, can also be made against the mortgages. *Vinton* v. *King*, 4 Allen, 562.

Whether the evidence reported can be said to prove the alleged illegality in the contract is a question which we have not found it necessary to decide, or even to consider. In any view that can be taken of that question, the plaintiffs are not in a position to claim the equitable relief prayed for; and therefore, in each case, the

*Bill is dismissed, with costs for the defendants.*