ALFRED B. WHITE, administrator with the will annexed, *vs.* BEACON TRUST COMPANY.

Suffolk.    May 15, 18, 1931. — October 2, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Corporation*, Officers and agents. *Agency*, Existence of relation. *Trust Company*. *Evidence*, Admissions, Competency, Of agency.

Upon the hearing by a judge without a jury of an action of scire facias against a Massachusetts trust company which had been defaulted as a trustee in trustee process, it appeared that a contract between the plaintiff and the defendant in the original action had been cancelled because of the failure by one, who was a vice-president and treasurer of the trust company, to issue a letter of credit for the plaintiff; and that, in negotiations with respect to the reinstatement and adjust-

ment of the plaintiff's contract, the vice-president and treasurer, to avoid liability of himself or of the trust company to the plaintiff, had agreed that a certain sum should be paid to the defendant in the original action. A determining issue was whether the agreement by the vice-president and treasurer in such negotiations bound the trust company to pay such sum, so that the trust company rightfully could be held to be a trustee of the defendant in the original action. There was no evidence of by-laws stating the powers of a vice-president and treasurer of the trust company, or of any meeting of directors dealing with such negotiations, or of knowledge of the possible liability of the trust company to the plaintiff on the part of anyone connected with the trust company except the vice-president and treasurer. The evidence was conflicting. The judge found for the trust company. *Held*, that

(1) What actually had taken place, whether the vice-president and treasurer was acting for the trust company, whether he had authority to bind it by what he did, what was his ostensible authority, were matters of fact to be determined by the judge;

(2) No rule of law required a finding that the officer had authority to bind the trust company in the circumstances shown;

(3) No error was disclosed.

The mere fact, that the trust company, when the trustee writ was served upon it, set aside money to meet a possible charge under the writ, was not, necessarily, an admission of liability to the defendant in the original action, nor a ratification of a contract with him.

Certain testimony of the vice-president and treasurer of the trust company, at the hearing of the action of scire facias above described, with regard to the practice of the trust company respecting letters of credit, and as to the effect of a telegram to the bank of the defendant in the original action respecting the letter of credit was admissible on the question of the state of mind of such officer in conducting the negotiations above described; and testimony by him with regard to conversations with the plaintiff was competent on the question, for whom he was acting.

SCIRE FACIAS, dated January 14, 1930, against a trustee in trustee process.

The original action was in contract and was begun by William Mann by trustee writ against "S. B. Thompson Company, a Corporation" and Beacon Trust Company, trustee. Service of the writ was made upon Beacon Trust Company but no service was made on the principal defendant. On motion by the plaintiff, his writ was amended by striking out the words "S. B. Thompson Company, a Corporation" and substituting in place thereof the following, "S. B. Thomson and I. K. Fabricand, co-partners, doing business under the name and style of S. B. Thomson

Company." Proper notice of that motion in accordance with the rules of court was given to Beacon Trust Company. Beacon Trust Company was defaulted and adjudged trustee for failure to appear and answer to the action. The principal defendants appeared and answered. The plaintiff, William Mann, died on April 28, 1924, and subsequently the administrator with the will annexed of his estate was given leave to appear and prosecute the action. Judgment for the plaintiff in the sum of $3,500 was entered and execution thereon issued against the principal defendants and Beacon Trust Company, trustee. The Beacon Trust Company refused to satisfy an execution, and this action was brought.

The action was heard in the Superior Court without a jury by *O'Connell,* J. Material facts found and rulings made by him are described in the opinion. The judge found for the defendant. The plaintiff alleged exceptions.

*J. C. Coughlin,* for the plaintiff.

*F. R. MacKenzie,* (*R. D. Greene* & *R. H. Peacock* with him,) for the defendant.

. WAIT, J. This is a scire facias to determine the amount, if anything, due to the judgment creditor from the Beacon Trust Company, which was defaulted and adjudged a trustee in an action begun by trustee process in the Superior Court. The case is before us upon exceptions claimed by the plaintiff at the trial before a judge sitting without jury.

There was evidence which would support findings as follows: On May 6, 1920, William Mann, who held a contract for the purchase of sugar from S. B. Thomson Company, a partnership, of New York, consulted one Billman, then vice-president and treasurer of the Beacon Trust Company, with reference to obtaining from that company a letter of credit to meet the requirements of his contract with S. B. Thomson Company. Billman agreed to issue the letter, directed the foreign department to attend to it, and wired the Bank of America, S. B. Thomson Company's bank, in New York: "We have arranged credit with William Mann eighty-eight Broad Street Boston sale to him S B Thompson & Company three hundred tons Java sugar twenty and one

quarter cents C I F New York May June delivery. Beacon Trust Company." The matter then passed from his mind. The contract for the sugar required Mann to open immediately with a New York bank a confirmed irrevocable credit for the full amount of the agreed price. Nothing was done further by Billman or the trust company until, on May 21, Mann came to the company's place of business, saw Billman and told him that the S. B. Thomson Company had cancelled the contract because no credit had been opened. Ordinarily from one to six days is needed to prepare a full letter of credit. The delay until May 21 was unreasonable. In practice the trust company regarded a credit as established when telegraphic notice is sent to the bank to which the letter of credit is to go when prepared. Billman immediately wired the Thomson firm: "We wired Bank of America New York on May sixth we had arranged credit with William Mann covering three hundred tons Java sugar Beacon Trust Co," and wrote on the letterhead of the Beacon Trust Company, also confirming the telegram, signing, "C. L. Billman Vice President." On May 26 he went to New York and had a conference with S. B. Thomson at the Bank of America. He was accompanied by one MacCormack, the head of Mann's sugar department, and went, he testified, "to see Mr. Thomson in regard to this transaction but not the part Beacon Trust Company had in it." The price of sugar had risen. After a long conference he agreed that if Thomson would reinstate the contract, the company should be paid one half cent per pound of sugar delivered, about $3,360. This he did without conference with either Mann or the Beacon Trust Company. Thomson agreed to reinstate the contract, Billman went back to Boston and, on May 27, the Beacon Trust Company arranged with the Chase National Bank of New York for the credit. On the same day a letter to the S. B. Thomson Company on the letterhead of the Beacon Trust Company and over the signature of C. L. Billman, vice-president, was sent stating: "This is to confirm our arrangements made with you yesterday at the Bank of America whereby it was agreed that you reopen the contract between yourselves and William Mann, all

terms of the contract to be the same as the original, covering purchase by them of three hundred tons Java sugar at 20¼c per pound, C. I. F. New York May/June delivery. On delivery of this sugar, we will ask you to render statement at one-half cent per pound, which amount aggregating about $3,360.00 we agreed to forward to you. We will ask you to advise Mr. William Mann by letter withdrawing cancellation and stating that same is now in force." In course of time the sugar arrived and was paid for by the Chase National Bank credit. Thomson, on August 11, 1920, sent an invoice to the Beacon Trust Company and asked for a check for $3,360. His letter shows there had been discussion about his releasing liability. This he refused to do. He asserted that by his consenting at this price to the reinstatement of the contract the trust company had been saved about $15,000, and he had lost a chance to make $20,500 owing to the rise in price between May 6 and May 26. Further correspondence resulted, partly, at least, over weights of the sugar. It was agreed that six hundred sixty-six thousand fifty-nine pounds were delivered. On October 26, 1920, on the letterhead of the Beacon Trust Company and over the signature of "C. L. Billman Vice President," Thomson's lawyers were informed: ". . . We are under no obligation to S. B. Thompson Co. but if Mr. Thompson persists in repudiating his agreement with our Mr. Billman we shall probably pay to avoid litigation. . . . you will hear from us promptly after we receive reliable evidence of the weight of the sugar accepted by Mann & Co."

On November 1, 1920, on letterhead of the Beacon Trust Company over the signature of C. L. Billman, vice-president, Thomson's lawyers were notified that seventy-three bags had been rejected as unsound "which, according to our figures, reduces your client's claim to $3,250.68. Please advise us if the payment of this amount will be satisfactory." November 5, 1920, Thomson's lawyers wrote the Beacon Trust Company suggesting a compromise on weight allowances and asking for a check for $3,281.89, and on November 6 were notified, on the letterhead of the Beacon

Trust Company and over the signature of C. L. Billman, vice-president, that William Mann & Company had "trusteed these funds" and that no remittance could be made until the process was released. The trustee writ was dated November 3, 1920, and served on November 4. The *ad damnum* does not appear. The trust company set aside out of the commission paid by Mann money to meet any liability found to exist. On his return to Boston Billman saw Mann and told him what he had done. Mann objected. Billman testified that Mann never repudiated what had been done. He said not to pay as Thomson owed him more. At the conference in New York Mac-Cormack, so Thomson testified, declared that William Mann & Company had nothing to do with the transaction, that it was wholly between Thomson and the Beacon Trust Company. No mention of the one-half cent payment agreement was made in the letter of the S. B. Thomson Company to Mann announcing the reinstatement of the contract or in that of Mann to the S. B. Thomson Company thanking him for doing it, although the latter called Thomson's attention to the fact "that this has been no fault of ours, in any way, shape, or manner, we having carried out not only the context of the contract, but all the details in full."

No evidence of by-laws stating the powers of a vice-president and treasurer of the Beacon Trust Company or of any meeting of directors dealing with this matter was offered. Billman testified that he had no conference with officials of the trust company before acting, and no direction in regard thereto. He declared he was acting on behalf of Mann, but testified, as well, that if Mann had repudiated the trade, the trust company or himself, personally, would have had to carry it out as it was made in good faith.

What actually had taken place, whether Billman was acting for the trust company, whether he had authority to bind it by what he did, what was his ostensible authority, are matters of fact. With that we have nothing to do. The findings and rulings of the trial judge show that he was

satisfied that Billman was not acting for the trust company, and had no actual or ostensible authority so to act. We cannot say, as matter of law, that he was in error. We are unable to discover any uncontroverted fact which compels a decision in the plaintiff's favor as matter of law. The judge's finding for the defendant imports findings consistent therewith on all material issues.

There was no error in the refusals to give the rulings requested. All the rulings which were not given involved findings of fact which were contradicted by the finding actually made by the judge. They were inapplicable as statements of law material in the circumstances which the judge found to exist. Unless Billman had actual or ostensible authority to bind the Beacon Trust Company it had made no contract with the S. B. Thomson Company and done nothing with reference to making one.

It was immaterial whether an amendment to the writ released the trustee if no liability of the trustee existed. There was no error in the modification made in giving request 17. Setting aside money to meet a possible charge under a trustee writ is not, necessarily, an admission of liability to the alleged debtor in the writ, nor a ratification of a contract with him.

No case is called to our attention, and we find none, which decides that a servant or officer of a banking institution has even ostensible authority to bind the corporation by a contract to pay a considerable sum in order to avoid a possible liability for a larger amount. *Judge* v. *National Security Bank of Boston*, 272 Mass. 286, cited by the plaintiff, differs essentially and is not controlling here. A compromise requires action by the corporation. *Hosher-Platt Co.* v. *Miller*, 238 Mass. 518. The transaction before us was not a compromise, but is analogous to one. To avoid liability to Mann, a contract is made with Thomson, and, so far as distinctly appears, without knowledge by the corporation of the first liability except on the part of the officer responsible for the fault. No rule of law requires a finding that the officer had authority to bind the corporation in such circumstances. Doubtless a different finding was per-

missible on the evidence; but, as already stated, with that we have nothing to do. That was for the trier of the facts.

Nor do we find prejudicial error in the admission or exclusion of evidence. The testimony of Billman with regard to the practice of the trust company and the effect of the telegram to the Bank of America was admissible on the state of mind of Billman when he went to New York and interviewed Thomson. His testimony with regard to conversations with MacCormack and Mann was competent on the issue for whom he was acting. An agent on the stand can testify to facts which show his authority, and for whom he was acting.

*Exceptions overruled.*