DANIEL H. COUNCIL & another *vs.* SAMUEL COHEN.

Suffolk.     February 13, 1939. — June 26, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Mortgage,* Of real estate: validity, cancellation. *Home Owners' Loan Corporation. Equity Jurisdiction,* Plaintiff's clean hands, Cancellation. *Words,* "Public policy."

Although the home owners' loan act contains no express prohibition against either the giving or the receipt of a second mortgage subject to a first mortgage to the Home Owners' Loan Corporation, a finding, that the taking of such a second mortgage by one who had been in possession of the property after a sale in foreclosure of mortgages he had had thereon was against public policy and void, was warranted where it appeared that no new consideration was given therefor and that it was given by the home owner and accepted by the mortgagee without knowledge or authority of the corporation and after the mortgagee had accepted bonds and cash from the corporation and had

delivered to it a document including an acknowledgment by him that he consented to accept the bonds and cash "in full settlement of" his claim and "to release all claims" he had "against the property."

A final decree which adjudged void as against public policy a second mortgage taken by the defendant subject to a mortgage to the Home Owners' Loan Corporation properly also included an order that the defendant repay to the mortgagor interest which the mortgagor had paid thereon, the parties not being *in pari delicto.*

BILL IN EQUITY, filed in the Superior Court on February 1, 1938.

From a final decree entered after hearing by *Greenhalge,* J., the defendant appealed. The decree adjudged the defendant's second mortgage void and ordered the defendant to discharge it and to repay to the plaintiffs interest paid thereon.

*J. Schneider,* (*P. M. Pinciss* with him,) for the defendant.

*H. Wise,* for the plaintiffs.

Cox, J. This is a bill in equity in which the plaintiffs seek among other things to have declared void a second mortgage and the note secured thereby, given by them to the defendant, subject to a first mortgage to the Home Owners' Loan Corporation, hereinafter referred to as the corporation. There is no report of the evidence. The judge of the Superior Court who heard the case filed a statement of findings, rulings, and order for decree; a final decree was entered granting relief to the plaintiffs and from this decree the defendant appealed.

The judge found that the premises in question had previously been mortgaged to the defendant by a first mortgage of $10,000 and by a second mortgage of $1,400, and that upon default, on August 7, 1934, the defendant acquired title by foreclosure of his first mortgage. Thereafter one of the plaintiffs applied to the corporation for a loan (see Home Owners' Loan Act of 1933, c. 64, 48 U. S. Sts. at Large, 128, as amended; U. S. C., 1934 ed., Title 12, § 1461 *et seq.*), and after considerable negotiations between the corporation, the plaintiffs and the defendant, the corporation agreed to make a loan to the plaintiffs, the defendant "agreed to accept the sum of $6,100, face value, of the bonds of the . . . Corporation, . . ." together with

a small amount of cash, and "to release all claims against the property." On January 16, 1935, the defendant signed a paper entitled "Mortgagee's consent to take Bonds," which contained the following clause: "The undersigned hereby consents to accept in full settlement of the claim of the undersigned the sum of $6100 face value of the bonds of the Home Owners' Loan Corporation, said bonds bearing interest at the rate of 2¾% per annum, and cash in the amount of $23.44 and thereupon to release all claims of the undersigned against said property." Prior to the execution of this paper, the defendant had refused to agree to the transaction with the corporation or to accept its bonds unless the plaintiffs would execute a second mortgage to him, and it was finally agreed that he should receive such a mortgage in the sum of $3,500. On January 16, 1935, the parties went to an attorney "who in the matter of putting through such transactions was designated by the Home Owners' Loan Corporation and a mortgage to the corporation, together with the paper above referred to were signed by the respective parties. At the same time a second mortgage, in the terms agreed upon, from the plaintiffs to the defendant was drawn by the same attorney and was duly executed and both mortgages were recorded by the attorney. There was some evidence [not stated in the record] offered that the attorney communicated with some one connected with the corporation with respect to the second mortgage, but I do not find that it was authorized or even known to the proper officers of the corporation although the attorney doubtless acted in good faith." Thereafter the plaintiffs paid interest upon the second mortgage amounting to $481.25. The principal sum was due in three years and, upon failure of the plaintiffs to pay, the defendant threatened to foreclose, and this bill was brought alleging, among other things, that the second mortgage is illegal and void and against public policy in that it contravenes the policy and provisions of the said home owners' loan act. ". . . apart from the question of public policy alleged in the bill, there was nothing as between mortgagors and mortgagee to invalidate the second mortgage."

Immediately after the foregoing recital of facts the judge stated that "The real question, therefore, is whether or not the execution of an unauthorized second mortgage contravenes the public policy to be effectuated by the home owners' loan act." He then stated what he understood to be the purpose of the act and that, "Without entering upon a detail[ed] consideration of the provisions of the Act, I am satisfied that the execution of the second mortgage without the sanction of the Home Owners' Loan Corporation was contrary to the purpose and to the regulations adopted by the Corporation to make such purpose effectual and rule that it is contrary to public policy and void." This statement is followed by a finding that the plaintiffs were not guilty of laches, "if that question is open," and an order for a decree.

The record does not disclose that the findings of fact were made as a report of material facts under G. L. (Ter. Ed.) c. 214, § 23, and we are of the opinion that they ought not to be treated as having the same effect as a report under that statute. *Birnbaum* v. *Pamoukis*, 301 Mass. 559. *Cowan* v. *Mitchell*, 302 Mass. 417. In these circumstances the entry of the decree imports a finding of every fact essential to sustain it and within the scope of the pleadings. *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561, and cases cited. The ruling, however, that the execution of the second mortgage without the consent of the Home Owners' Loan Corporation is contrary to public policy and void is open upon this appeal. The reasons given for this ruling are immaterial if the ruling itself was right. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 512, and cases cited.

We may take judicial notice of the provisions of the home owners' loan act. *Theron Ford Co.* v. *Home Owners' Loan Corp.* 120 Conn. 250, 252. *Adkins* v. *Adkins*, 332 Ill. 422, 425. Among the purposes of this act are those to provide emergency relief for a limited period only with respect to home mortgage indebtedness, to refinance home mortgages, to extend relief to the owners of homes who occupy them and who are unable to amortize their debts elsewhere, and to redeem or to recover homes lost by foreclosure. The term

"home mortgage" is defined in the act to mean a first mortgage on property held in fee simple, and other interests in land that need not be described. The term "first mortgage" includes such classes of first liens as are commonly given to secure advances on real estate under the laws of the State in which the real estate is located, together with the credit instruments, if any, secured thereby. A home lost by foreclosure, as in the case at bar, may be redeemed or recovered by the exchange of bonds subject to the limitations provided for the acquisition of home mortgages. Nowhere in the act is there any expressed prohibition against either the mortgagor giving, or the mortgagee or owner of property acquired by foreclosure receiving, a second mortgage subject to a first mortgage to the corporation. The corporation, in exchange for bonds or cash, must acquire a first mortgage or lien on the premises involved, and it is obvious that an owner by foreclosure, as was the defendant, in the event of redemption, must divest himself of his title in order that such a mortgage or lien can be acquired. The acceptance of bonds by a mortgagee or owner of foreclosed premises is entirely optional. *Thorne* v. *Edwards*, 147 Ore. 443. It is assumed in the case at bar that the defendant, as a part of the transaction, conveyed the premises in question to the plaintiffs.

The term "public policy" is not easy to define. The statement of Lord Brougham in *Egerton* v. *Brownlow*, 4 H. L. Cas. 1, 196, is generally accepted; that is, that public policy is that principle of law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good. The court should proceed with extreme caution when called upon to declare a transaction void on grounds of public policy, and prejudice to the public interest should clearly appear before any such declaration is made. *Smith* v. *DuBose*, 78 Ga. 413, 435–439.

In the case at bar the defendant was the owner of the premises in question by virtue of the foreclosure of his first mortgage. The ascertainment of the amount that he would be willing to accept for a reconveyance to the plain-

tiffs would ordinarily be the result of an agreement. It may not be important, but nevertheless there is a material difference between the status of parties to a mortgage after its foreclosure and that existing before and when the rights of the mortgagee must depend upon the terms of his note and mortgage. In the former situation the mortgagee who has foreclosed properly has a title, the value of which is no longer, of necessity, measured by the amount of the mortgage debt. The defendant agreed to accept the bonds of the corporation together with a small amount of cash and to release all claims against the property. The consent that he signed was to accept these bonds and cash in full settlement of his claim. It is true that the defendant had refused to agree to this transaction unless the plaintiffs would execute a second mortgage to him, but the fact remains that the second mortgage was unauthorized in so far as the corporation was concerned and without its sanction.

Obviously it would not be against public policy for some creditor of the plaintiffs other than the defendant to take a second mortgage subject to the first mortgage to the corporation, nor would it be against public policy for some other creditor, or one having a claim against the plaintiffs, to attach the plaintiffs' property subject to the first mortgage. Foreclosure of such a creditor's second mortgage or sale under execution by the attaching creditor or claimant would, in theory at least, be as disastrous to the plaintiffs as a foreclosure by the defendant of his mortgage. The act does not purport to give a mortgagor, or one who has lost his home by foreclosure, an absolute protection through a first mortgage to the corporation against later loss of his home. It does not provide for a general moratorium of his debts and liabilities. We think, however, that a mortgagee or, as in the case at bar, the owner by foreclosure, who enters into a transaction to accept bonds for a transfer of the mortgage or for a reconveyance of the property foreclosed, should be regarded somewhat differently from other creditors or claimants. He is under no obligation to accept bonds in exchange for his mortgage or for a conveyance of the property. He knows that he is dealing with a govern-

mental agency to whom he has represented that he will accept bonds and possibly cash in full settlement of his claim.   To permit him to go behind this representation and obtain an advantage by way of a second mortgage may well defeat the primary purpose of the act itself.   It well may be that the corporation would never have consented to attempt to aid the plaintiffs if it had known of this agreement between them and the defendant for the execution of a second mortgage.

Cases where the facts were not quite the same have generally indicated that a transaction of this character is against public policy and void.   See *McAllister* v. *Drapeau*, 85 Pac. (2d) 523, where the cases are collected and discussed; decision reversed, 14 Cal. (2d) 102.   Compare *Markowitz* v. *Berg*, 125 N. J. Eq. 56.   In our opinion it cannot be said that the ruling of the trial judge was wrong.

The defendant contends that, in any event, the plaintiffs are not entitled to a repayment of the money paid by them for interest on the second mortgage.   It is well settled that "courts will not aid in the enforcement, nor afford relief against the evil consequences, of an illegal or immoral contract. . . . The general doctrine is subject to a qualification or exception as widely recognized and as thoroughly established as is the rule itself.   That exception is that, where the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not *in pari delicto*, and where there are elements of public policy more outraged by the conduct of one than of the other, then relief in equity may be granted to the less guilty."   *Berman* v. *Coakley*, 243 Mass. 348, 350.   In the case last cited, Chief Justice Rugg reviewed several of the cases in this Commonwealth and elsewhere dealing with this precise question.   At page 353 he said: "Another principle has been stated sometimes as the ground for relief.   It was said in *Cox* v. *Donnelly*, 34 Ark. 762, at page 766, 'Although, in general, courts of equity will not interpose to grant relief to persons who are parties to agreements or other transactions against public policy, there are cases where the public interest requires that they

should, for the promotion of public policy, interpose, and the relief in such cases is given to the public through the party.' It was phrased in *Madison* v. *Sharp*, 4 Colo. 275, at page 281, in these words: 'In cases where agreements or other transactions are repudiated, on account of their being against public policy, the circumstance that the relief is asked by a party who is *particeps criminis*, is not in equity material. The reason is, that the public interest requires that relief should be given, and it is given to the public through the party; and in these cases, relief will be granted, not only by setting aside the agreement or other transaction, but also, in many cases, by ordering re-payment of any money paid under it.'" As has been said already, one of the purposes of the act was to provide emergency relief with respect to home mortgage indebtedness and to redeem or recover homes lost by foreclosure. Obviously its intent is to aid the home owner and not the mortgagee or, as in the case at bar, an owner by way of foreclosure. If the latter derives a benefit from the act it is only because that is a necessary incident of the attempt to aid or relieve the home owner. In our opinion the parties in the case at bar are not *in pari delicto*, and as was said in the case of *Berman* v. *Coakley*, 243 Mass. 348, at page 355, "relief will be afforded to the plaintiff as plainly the less offending of the two." *White* v. *Franklin Bank*, 22 Pick. 181. *Meek* v. *Wilson*, 283 Mich. 679. See *Kneeland* v. *Emerton*, 280 Mass. 371, 378. Compare *Anderson* v. *Horst*, 132 Pa. Super. Ct. 140.

*Decree affirmed with costs.*