TALCOTT M. BANKS, JUNIOR, & others, trustees in bankruptcy, *vs.* EVERETT NATIONAL BANK.

Middlesex.    November 10, 1939. — February 2, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Bank and Banking.   Fraud.*

A finding of fraud in law of a bank upon the creditors of a corporation was not warranted by the facts merely that the corporation had an account with it in which the bank knew were deposited, besides the corporation's own funds, funds of a second corporation under common management with the first, that the bank knew another account in the name of an individual was in fact the second corporation's account, that from time to time transfers were made from the first to the second account, some of which were then used to cover overdrafts on the second account; but that the bank at all times acted honestly and in good faith and at the time of such transfers did not know that they exceeded the amount of the second corporation's funds on deposit in the first account nor the interest that the second corporation had in the first deposit.

BILL IN EQUITY, filed in the Superior Court on March 2, 1936.

A final decree dismissing the bill was entered by order of *F. T. Hammond,* J.

*T. M. Banks, Jr.,* (*V. L. Hennessy* with him,) for the plaintiffs.

*W. P. Lombard,* for the defendant.

RONAN, J.   The plaintiffs, the trustees in bankruptcy of the Universal Hoist & Body Company (hereinafter called the body company), allege that the defendant bank wrongfully transferred funds from the deposit of the body company to the account of the Universal Pressed Steel Company (hereinafter called the steel company), by charging the account of the former with a debit memorandum in a certain amount and crediting the account of the latter with a credit memorandum in the same amount, and by honoring checks drawn by an officer of the body company and payable to the steel company; that the proceeds of some

of these transfers were paid to the defendant in behalf of the steel company; and that the defendant charged and received from the body company fifty cents on each occasion when the account of this company was insufficient to pay its checks which had been presented to the defendant for payment. The bill seeks an accounting, and an order requiring the defendant to pay the amount shown to be due the plaintiffs as trustees aforesaid of the body company. The case was referred to a master, whose report was confirmed in the Superior Court. The plaintiffs appealed from a final decree dismissing the bill.

The body company maintained a place of business in Everett from the time of its incorporation in 1912 until it was adjudicated a bankrupt on April 20, 1933, during which period it was engaged in the manufacture of automobile truck bodies and hoisting appliances for attachment to such bodies. The steel company was engaged in the manufacture of steel stampings from the time of its incorporation in 1926 until it ceased business on February 24, 1933, when it went into receivership. In 1928 it removed its business to the rear part of the building owned by the body company, and the latter occupied the front of this building. The corporations shared a common office, where the books of both were kept by one Temple and the businesses of both transacted. One Higgins was in virtual control of both companies. He was the president, treasurer and director of each company during the period now in question. Temple was a director in each company.

The body company had an inactive account with the defendant bank for some time prior to the summer of 1928; the account then became active and the body company did all its banking with the defendant until 1932, when an account was opened in another bank. The bank account of the steel company had been subjected to attachments, and an account in the name of Temple was opened by a deposit of a check from the body company. Checks on the Temple account were always signed by Higgins and Temple. Soon after the opening of the Temple account, the steel company began to deposit all its checks in the account of

the body company, and thereafter funds were transferred from the account of the body company to the Temple account to meet checks drawn against the latter account. Such transfers were accomplished either by checks payable to the Temple account, drawn by the officers who were authorized to draw checks upon the body company account, or by a charge slip to the body company account and a corresponding credit slip to the Temple account by an official of the defendant after such a transfer was directed either in writing or orally by those who were authorized to draw checks in behalf of the body company. The defendant each month returned the cancelled checks together with these slips to both companies. The ledger accounts of each company showed at all times a complete and accurate statement of the dealings between them. These accounts showed an increasing balance due the body company, which amounted to $29,413.54 on February 24, 1933, when the steel company made an assignment for the benefit of creditors.

The defendant knew that the Temple account was the account of the steel company and that this company was depositing its receipts in the body company account. At the time of the transfers from the body company account to the Temple account, it did not know that such transfers exceeded the deposit of funds of the steel company in the account of the body company, and it did not know the interest, if any, that the steel company had in the deposit in the name of the body company. The defendant received each morning checks drawn upon accounts in its bank and, under the rules of the clearing house association, was obliged to pay or return checks at the close of business on the day of their receipt. There was an established custom among banks to transfer funds in accordance with written orders, checks or by instructions given by telephone. The deposit in the Temple account was frequently insufficient to pay the checks drawn upon it, and from October 21, 1929, to February 23, 1933, $44,917.22 was transferred to this account from the body company account. .

The bank had no pecuniary interest in either the account

of Temple or that of the body company, excepting when the bank neglected to return the unpaid checks drawn against the Temple account and thereby became obligated to pay the amount of these checks and to that extent became the creditor of the steel company. These overdrafts were few in number and amounted to $2,495.86. They were paid from the Temple account after funds had been transferred to it from the account of the body company. The charge of $749, made by the defendant to the account of the body company for service rendered in notifying the company when its account was insufficient to clear its checks, was based upon a charge of fifty cents for each check presented when the account of the body company was insufficient to pay it, and was found by the master to be fair and reasonable and in accordance with a well recognized custom among banks.

The master found that the bank acted honestly and in good faith; that no benefit accrued to it except from the payment of the overdrafts and the service charge; and that all transactions between the bank and both companies were free from fraud unless they constituted a fraud upon the creditors of the body company. None of the subsidiary findings of the master is inconsistent with these ultimate findings. The conclusions of the master must be accepted as true. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431. *Ramseyer* v. *Conlon,* 303 Mass. 270.

A bank, acting in good faith, that merely credits funds it knows are trust funds to the personal account of the trustee is not liable if the trustee subsequently misappropriates these funds. *Batchelder* v. *Central National Bank of Boston,* 188 Mass. 25. *Kendall* v. *Fidelity Trust Co.* 230 Mass. 238. *Eastern Mutual Ins. Co.* v. *Atlantic National Bank of Boston,* 260 Mass. 485. *Ogden* v. *Atlantic National Bank of Boston,* 276 Mass. 130. Neither is a bank, acting in good faith, liable for paying a check payable to a third person and drawn by one who had authority to draw checks even if the proceeds of the check were fraudulently diverted from the funds of the depositor. *Newburyport* v. *Spear,* 204 Mass. 146. *Newburyport* v. *First National Bank of Boston,* 216 Mass.

304.   *Allen* v. *Fourth National Bank*, 224 Mass. 239.   A
bank that accepts in payment of a personal obligation of a
fiduciary trust funds which it knows to be such, or, with
notice that trust funds are being wrongfully diverted, joins
in assisting others to misappropriate such funds, is bound
to account to the trust estate for the loss thereby sus-
tained.   *Allen* v. *Puritan Trust Co.* 211 Mass. 409.   *Tingley*
v. *North Middlesex Savings Bank*, 266 Mass. 337.   This is
but an application of the general rule that one who
participates in the breach of trust by a fiduciary is
responsible for the damage resulting to the trust if he
knew that the fiduciary was committing such a breach
or if he had knowledge of such facts that he could not
reasonably be held to have acted in good faith.   One who
receives trust property with notice that its delivery consti-
tutes a breach of trust holds the property as constructive
trustee for the beneficiaries.   *Jones* v. *Jones*, 297 Mass. 198.
*Jones* v. *Swift*, 300 Mass. 177.   *Berry* v. *Kyes*, 304 Mass.
56.   Am. Law Inst. Restatement: Trusts, §§ 289, 291,
292.

The companies could deposit their moneys in such ac-
counts as they deemed convenient.   The bank was obliged
to honor checks drawn against an account as long as it had
funds of the drawer available and sufficient to pay the
checks.   *Wiley* v. *Bunker Hill National Bank*, 183 Mass.
495.   *Castaline* v. *National City Bank of Chelsea*, 244 Mass.
416.   The bank knew that the Temple account belonged
to the steel company and that the latter company was de-
positing its receipts in the account of the body company,
but it did not know at the time any of the transfers was
made from the account of the body company to the account
of Temple, what amount of the steel company's funds was
in the account of the body company.   The companies were
under common management and control, and the bank in
honoring the checks drawn on the Temple account, which
was frequently replenished by transfers from the account
of the body company, could be found to have been war-
ranted in believing that this arrangement had been agreed
upon between the companies.   The bank had been informed

that these banking transactions were fully and correctly set forth in the books of each company, and the vice-president of the defendant, who had visited the manufacturing plant of each of the companies, knew that each had dealings in merchandise with the other in substantial amounts. Although the cancelled checks together with the memorandum slips were returned monthly to both companies, no complaint was ever made to the defendant while each company continued in business that any improper withdrawal of funds had been made.

But the plaintiffs contend that funds of the body company were improperly used to pay the overdrafts owed to the defendant by the steel company. This is not the case of a creditor of a fiduciary accepting trust funds in payment of the personal indebtedness of the fiduciary. The steel company owed the defendant on account of the overdrafts. This was an indebtedness of the steel company for the satisfaction of which its corporate funds could be used. Though funds applied to the payment of the overdrafts came into the account of the steel company from the account standing in the name of the body company, the bank knew that deposits belonging to the steel company had been made in this account. The bank, on the findings of the master, was justified in believing that the steel company had a proprietary interest in this account, and that its funds were properly transferred in the payment of its indebtedness to the bank. In any event, the plaintiffs have failed to show that the bank knew that any funds held by the steel company for the benefit of the body company were used to pay these overdrafts of the steel company. We need not decide whether any trust relationship existed between these two companies because it does not appear from the findings of the master that the bank at the time it received payments upon the overdrafts had notice or knowledge that any such relationship existed. *School District in Greenfield* v. *First National Bank in Greenfield,* 102 Mass. 174. *Wood* v. *Boylston National Bank,* 129 Mass. 358. *Spaulding* v. *Kendrick,* 172 Mass. 71. *Allen* v. *Fourth National Bank,* 224 Mass. 239. *Pratt* v. *Higginson,* 230

Mass. 256. *Ironside* v. *Levi*, 278 Mass. 18. Am. Law Inst. Restatement: Trusts, § 284.

The case is plainly distinguishable from *Childs, Jeffries & Co. Inc.* v. *Bright*, 283 Mass. 283, and *Proctor* v. *Norris*, 285 Mass. 161, where corporate checks payable to the defendants were received in the first case for a personal obligation of an officer of the corporation, and in the second case for a purpose that the defendant knew was an improper use of the funds of the corporation.

The plaintiffs' exceptions to the master's report complain of findings of the master and his failure to make further findings of fact. The basis of these exceptions does not appear in the report. The matters contained in the exceptions might have been urged in support of a motion to recommit but no such motion was filed. The exceptions were properly overruled. *Pearson* v. *Mulloney*, 289 Mass. 508. *Wilbur* v. *Newton*, 302 Mass. 38. *Chopelas* v. *Chopelas*, 303 Mass. 33.

*Decrees affirmed.*