ALFRED L. ARCIDI *vs.* NATIONAL ASSOCIATION OF GOVERN-
MENT EMPLOYEES, INC.

Essex. October 3, 2006. - November 7, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Illegality. *Damages,* Breach of fiduciary duty.

Where a consulting agreement between the plaintiff in a civil action and the
    defendant was illegal under G. L. c. 3, § 42, because one contingency of
    the agreement was that a certain project be approved by the Massachusetts
    Turnpike Authority, this court declined to aid either party to enforce it
    against the other, where there was no contention that the plaintiff had taken
    advantage of and oppressed the defendant, or that G. L. c. 3, § 42, was
    intended to protect those in the defendant's position rather than the
    plaintiff's [619-622]; further, this court declined to apply the tort of aiding
    and abetting a breach of fiduciary duty to the facts of this case [622-624].

CIVIL ACTION commenced in the Superior Court Department on
October 23, 2002.

The case was heard by *Elizabeth M. Fahey,* J., on motions
for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Robert L. Sheketoff* for the plaintiff.

*W. Gary Kohlman,* of the District of Columbia, for the
defendant.

COWIN, J. Alfred Arcidi and the National Association of
Government Employees, Inc. (NAGE), entered into a "consult-
ing agreement" whereby Arcidi was to secure the approval of a
proposed real estate development by the Massachusetts Turnpike
Authority (MTA). The agreement provided that Arcidi would
receive $250,000 provided that the development was "approved
and built." Arcidi received $200,000 after the project was ap-
proved by MTA but was never paid the $50,000 balance, and

sued NAGE.[1] NAGE defended on the ground that the contract was unenforceable because G. L. c. 3, § 42,[2] prohibits contracts in which compensation is contingent on a decision of a government authority. NAGE also counterclaimed for the money it had already paid Arcidi, alleging that NAGE's president, Kenneth T. Lyons, had violated his fiduciary duty to NAGE by entering into the agreement, and that Arcidi was liable for aiding and abetting that breach of fiduciary duty.

NAGE moved for summary judgment on both Arcidi's contract claim and its own counterclaim for the $200,000. A judge of the Superior Court granted summary judgment for NAGE on its counterclaim as well as on Arcidi's claim. Arcidi appealed the ensuing final judgment for NAGE to the Appeals Court, which affirmed in an unpublished memorandum and order, *Arcidi* v. *National Ass'n of Gov't Employees, Inc.*, 64 Mass. App. Ct. 1110 (2005). The Appeals Court concluded that the consulting agreement was unlawful and that Arcidi could not recover on it, but that NAGE could recover the $200,000 paid to Arcidi because it was not equally at fault for the contract's illegality. We granted Arcidi's application for further appellate review.

*Facts.* We summarize the undisputed material facts. NAGE is a labor organization whose membership is comprised of Federal, State, and municipal workers. Lyons was at all relevant times the president of NAGE.[3] NAGE Housing, Inc. (NHI), is a subsidiary of NAGE that engages in real estate development activities for the union. In 1998, MTA issued a request for

---

[1] Arcidi brought claims for breach of contract and for unfair and deceptive trade practices under G. L. c. 93A, § 11.

[2] General Laws c. 3, § 42, states in relevant part:

> "No person shall make any agreement whereby any compensation or thing of value is to be paid to any person contingent upon a decision as described in the definition of 'executive agent', or the passage or defeat of any legislation or the approval or veto of any legislation by the governor. No person shall agree to undertake to influence such a decision, or to communicate to influence such a decision or to promote, oppose or influence legislation or to communicate with members of the legislature, or to advocate approval or veto by the governor for consideration to be paid upon the contingency of the outcome of such a decision or that any legislation is passed or defeated."

[3] Lyons was removed from office at a later date.

proposals for development of several parcels of land in the Central Artery North Area in Charlestown. NHI submitted a proposal to build a luxury condominium development to be known as "Nautica" on one of these parcels.

At some point, Lyons became concerned that MTA was being subjected to political pressure to award the project to a developer other than NHI. A decision was made to enlist the services of Arcidi, who is described by himself and Lyons as an individual with experience and "credibility" in dealing with State and local government officials. Ultimately, Arcidi and NAGE entered into a one-page, undated "consulting agreement" on NAGE letterhead, signed only by Lyons and not by Arcidi. Lyons signed the agreement on NAGE's behalf in his capacity as its "National President." The agreement stated, in part:

> "The National Association of Government Employees retains the services of Dr. Alfred L. Arcidi as a Consultant specifically for the proposed development of condominiums called *Nautica* on Parcel 1 of the Central Artery North Area. . . . It is hereby proposed[4] to grant Dr. Alfred Arcidi $250,000 for his services providing said development is approved and built."

The agreement did not specify what "services" Arcidi was to perform, but Arcidi understood his role as securing MTA's approval of the Nautica project for NAGE.

MTA eventually approved NHI's proposal for development of the Nautica project. Some time thereafter, Arcidi received a check for $200,000 drawn on NHI's account and signed by Lyons. Arcidi's understanding was that he would receive the balance when the project was completed. When this did not occur, Arcidi filed the instant suit.

*Discussion.* On appeal, Arcidi does not argue that he is entitled to the additional $50,000 on the contract. Rather, he contends that NAGE cannot recover the $200,000 already paid to him under any theory of relief. Arcidi maintains that it is he,

---

[4]No argument is made concerning the fact that the agreement uses the word "proposed" and is not signed by Arcidi.

and not NAGE, who is entitled to summary judgment on NAGE's counterclaim. We agree.

1. *Standard of review.* Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Ng Brothers Constr., Inc.* v. *Cranney*, 436 Mass. 638, 643-644 (2002). The moving party has the burden of demonstrating affirmatively the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial. *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 39 (2005).

2. *Legality of the consulting agreement.* General Laws c. 3, § 42, provides, in part:

> "No person shall make any agreement whereby any compensation or thing of value is to be paid to any person contingent upon a decision as described in the definition of 'executive agent' . . . ."[5]

The statute makes unlawful any agreement in which compensation is made "contingent upon a decision" of a Commonwealth authority. *Id.* Because one contingency of the consulting agreement between NAGE and Arcidi was that NAGE's proposed development be approved by MTA, the agreement violates G. L. c. 3, § 42. It is immaterial that there was an additional contingency that the project eventually be built; so long as a favorable government decision was one of the express conditions to payment, the agreement violates both the letter and spirit of the statute.

3. *Recovery of money paid pursuant to an illegal agreement.*

a. *The general rule.* "[I]t has . . . long been settled that the law will not aid either party to an illegal contract to enforce it against the other, neither will it relieve a party to such a contract . . . who seeks to reclaim his money or whatever article of property he may have applied to such a purpose." *Atwood* v. *Fisk*, 101 Mass. 363, 364 (1869). See *Council* v. *Cohen*, 303

---

[5]The definition of "executive agent" appears in G. L. c. 3, § 39, and refers to "a person who for compensation or reward, acts to influence the *decision* of any officer or employee of the executive branch *or an authority*" (emphasis added). The definition of "authority" expressly includes the Massachusetts Turnpike Authority. *Id.*

Mass. 348, 354 (1939), quoting *Berman* v. *Coakley*, 243 Mass. 348, 350 (1923) ("courts will not aid in the enforcement, nor afford relief against the evil consequences, of an illegal or immoral contract"). The policy underlying this rule is that "[t]he suppression of illegal contracts is far more likely in general to be accomplished, by leaving the parties without remedy against each other." *Atwood* v. *Fisk, supra*. Accordingly, the general rule is that a court leaves parties to an illegal contract in the same position as it finds them. See *Duane* v. *Merchants' Legal Stamp Co.*, 227 Mass. 466, 468-469 (1917); *Huckins* v. *Hunt*, 138 Mass. 366, 366-367 (1885); *Atwood* v. *Fisk, supra*.

b. *Recovery by NAGE on the ground that it was not equally at fault with Arcidi.* The general rule that courts will not grant relief to parties to an illegal contract is subject to an exception:

> "where the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not in pari delicto, and where there are elements of public policy more outraged by the conduct of one than of the other, then relief in equity may be granted to the less guilty."

*Berman* v. *Coakley, supra*. The Appeals Court concluded that Arcidi and NAGE were "not in equal fault as to the illegal element" of the consulting agreement, and thus that NAGE was entitled to return of the $200,000 paid to Arcidi. The Appeals Court stated: "Because there is no evidence in this record that Lyons acted with authorization from NAGE, we view NAGE as not chargeable with any misconduct, and, therefore, as the clearly 'less guilty' party, NAGE is entitled to relief." We disagree with the Appeals Court that the exception of *Berman* v. *Coakley, supra*, applies, and we rely instead on the general rule that a court will not aid either party to an illegal contract.

In concluding that NAGE and Arcidi were not equally at fault, the Appeals Court relied on the absence of any specific authorization for Lyons to enter into the consulting agreement. However, Lyons testified at his deposition that he had authority under NAGE's "constitution of [*sic*] bylaws" to contract with Arcidi on NAGE's behalf, without needing board approval or ratification. See *White* v. *Beacon Trust Co.*, 277 Mass. 75, 82 (1931) (agents may testify as to their authority). In addition, Ar-

cidi introduced evidence tending to show that at least some members of NAGE's board knew about, and approved of, the proposed agreement. Thus, at a minimum, there were outstanding factual questions regarding Lyons's authority to enter into the agreement that precluded summary judgment for NAGE.

However, we need not decide whether Lyons was authorized to enter into the agreement, because NAGE would not be entitled to relief even if he were not. We have required more than a slight difference in culpability before we will grant equitable relief to a party to an illegal contract. The cases where we have done so generally fall into two categories.[6] The first comprises cases "in which one of the parties has, by an illegal act, taken advantage of and oppressed the other." *Berman* v. *Coakley, supra* at 351, quoting *Inhabitants of Worcester* v. *Eaton*, 11 Mass. 368, 376 (1814) (allowing plaintiff equitable relief where defendant fraudulently coerced him into unlawful agreement to suppress criminal prosecution). The second involves cases where the provision of law rendering the contract illegal was clearly intended to benefit one party over the other, i.e., the public policy is intended to protect persons of the class to which one party belongs. See *Council* v. *Cohen, supra* at 355 (allowing plaintiff to recover interest paid on mortgage contravened Federal home owners' loan act because purpose of that act was "to aid the homeowner and not the mortgagee"). Here, there is no contention that Arcidi had "taken advantage of and oppressed" NAGE or Lyons, *Berman* v. *Coakley, supra*, or that G. L. c. 3, § 42, was intended to protect those in NAGE's position rather than Arcidi's. As no other equitable consideration is present, the unusual step of allowing NAGE to recover funds paid on an illegal contract is not warranted.

As the Supreme Court of Illinois has observed, granting relief to a less guilty party to an illegal contract is a discretionary decision grounded in public policy, not a matter of right:

> "Although courts will generally not enforce contracts which are against public policy where the parties are in pari delicto, this is not to say a court must enforce an

---

[6]The Restatement (Second) of Contracts also recognizes these categories. See Restatement (Second) of Contracts § 198 comment b, at 74-75 (1981).

agreement when the parties are not in pari delicto. '[T]he interest of the public, rather than the equitable standing of the individual parties, is of determining importance.' "

*O'Hara* v. *Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 348 (1989), quoting *Parish* v. *Schwartz*, 344 Ill. 563, 572 (1931). See 8 Williston, Contracts § 19:79 (4th ed. 1998). We have said that the relief in such cases "is given to the public through the party." *Council* v. *Cohen, supra* at 355. Here, the public interest weighs against granting NAGE relief. NAGE essentially argues that it is less at fault for the contract's illegality because it was the decision of Lyons, and not of NAGE, to enter into it. Yet because an organization can only act through agents, this argument would apply to virtually every case in which an organization paid money on an illegal contract. Compare *O'Hara* v. *Ahlgren, Blumenfeld & Kempster, supra* at 349 (rejecting argument that nonattorney in illegal fee-sharing agreement with attorney was less culpable, because it would apply to every such agreement). Adopting NAGE's position would make it too easy for organizations to reap the benefits of illegal contracts when it is convenient, while deflecting the consequences onto agents and third parties when it is not.

c. *Recovery by NAGE under a theory of aiding and abetting a breach of fiduciary duty.* That which it cannot recover from Arcidi under contract principles, NAGE attempts to recover in tort. NAGE contends that Lyons breached his fiduciary duty to NAGE by entering into an illegal contract with Arcidi, and that solely by virtue of being the other party to the contract, Arcidi is liable for aiding and abetting a breach of fiduciary duty. See *Banks* v. *Everett Nat'l Bank*, 305 Mass. 178, 182 (1940) (recognizing tort of aiding and abetting breach of fiduciary duty). We reject this attempt to circumvent the contract law principle that a court leaves parties to an illegal contract as it finds them.

We have in the past prohibited parties from obtaining results through tort law that were unavailable in contract. See, e.g., *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 478 (2001) (noting that plaintiff who could not successfully sue corporation in contract could not recover from corporation's alter ego in tort).

In addition, the fact that a contract is unenforceable as against public policy generally forecloses all remedies, regardless of the label, unless a party can show that it was not equally at fault. See *Capazzoli* v. *Holzwasser*, 397 Mass. 158, 160 (1986) (contract in consideration of plaintiff's abandonment of her marriage held unenforceable "on a contract, quantum meruit, or any other theory"). See also *T.F.* v. *B.L.*, 442 Mass. 522, 530 n.8 (2004) (party to unenforceable contract to create child could not recover child support on alternative theory of promissory estoppel); *Lowell* v. *Massachusetts Bonding & Ins. Co.*, 313 Mass. 257, 272 (1943) (no recovery in quantum meruit where contract illegal for failure to comply with statutory requisites).

Furthermore, allowing NAGE to recover money paid on an illegal contract under its aiding and abetting theory would lead to unjust results. When two natural persons form an illegal contract, the law affords neither one any remedy unless they are not equally at fault. Yet, as noted above, if we were to agree with NAGE, any entity other than a natural person that paid money on an illegal contract would be able to recover it simply by shifting the blame to an agent. Not only would this create one rule of illegal contracts for natural persons and another for organizations, it would impose upon a party contracting with an organization's agent the affirmative obligation to determine whether the contract breached any of the agent's fiduciary duties. See *Kolbeck* v. *LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998) (party does not aid and abet breach of fiduciary duty by mere failure to investigate, in absence of independent duty to do so). Thus, we decline to apply the tort of aiding and abetting a breach of fiduciary duty to the facts of this case, and NAGE's counterclaim fails as a matter of law.

Even if we were to reach the merits of NAGE's aiding and abetting claim, it would fail because NAGE cannot show that Arcidi had the requisite degree of participation in a breach of fiduciary duty. Although sometimes stated in slightly different ways, the elements of the tort of aiding and abetting a fiduciary breach are (1) there must be a breach of fiduciary duty, (2) the defendant must know of the breach, and (3) the defendant must actively participate or substantially assist in or encourage the

breach to the degree that he or she could not reasonably be held to have acted in good faith. See *Spinner* v. *Nutt*, 417 Mass. 549, 556 (1994); *Augat, Inc.* v. *Aegis, Inc.*, 409 Mass. 165, 172 (1991); *Banks* v. *Everett Nat'l Bank, supra* at 182; Restatement (Second) of Torts § 876 (1979). NAGE's only evidence of Arcidi's participation is the fact that he entered into the consulting agreement. Even assuming that Lyons was not authorized to make the illegal agreement and that he thus breached his fiduciary duties to NAGE, the parties have directed us to no case holding a third party liable to a principal merely for entering into an arm's-length transaction that happens to exceed an agent's authority. Cf. Restatement (Second) of Agency § 312 comment b, at 51 (1958) ("One who, in good faith, deals with an agent who is not authorized to conduct a transaction but who, because of apparent authority or other power, can bind the principal, assists the agent to commit a breach of duty, but of course he is not liable to the principal").

*Conclusion.* That portion of the judgment in favor of NAGE on Arcidi's complaint seeking the additional $50,000 due under the contract is affirmed. Judgment for NAGE on its counterclaim for the $200,000 already paid is reversed. Judgment on the counterclaim shall enter for Arcidi.

*So ordered.*